**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

```
UNITED STATES OF AMERICA,        )
                                 )
            PLAINTIFF,           )
                                 )
        vs.                      ) SACR NO. 20-00002-(B)-DOC
                                 ) Day 1, Volume III
HOANG XUAN LE,                   )
                                 )
            DEFENDANT.           )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY SELECTION

SANTA ANA, CALIFORNIA

MONDAY, NOVEMBER 8, 2021

1:34 P.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(657) 229-4305**
**transcripts@ddparker.com**

*Deborah D. Parker, U.S. Court Reporter*

**APPEARANCES OF COUNSEL:**

    FOR THE PLAINTIFF, UNITED STATES OF AMERICA:

                      TRACY L. WILKISON
                      ACTING UNITED STATES ATTORNEY

                      SCOTT M. GARRINGER
                      ASSISTANT UNITED STATES ATTORNEY
                      CHIEF, CRIMINAL DIVISION

                      GREGORY S. SCALLY
                      ASSISTANT UNITED STATES ATTORNEY
                      UNITED STATES DISTRICT COURT
                      8000 RONALD REAGAN FEDERAL BUILDING
                      SANTA ANA, CALIFORNIA 92701
                      (714) 338-3592
                      gregory.scally@usdoj.gov

                      GREGORY STAPLES
                      ASSISTANT UNITED STATES ATTORNEY
                      UNITED STATES DISTRICT COURT
                      8000 RONALD REAGAN FEDERAL BUILDING
                      SANTA ANA, CALIFORNIA 92701
                      (714) 338-3534
                      gregory.staples@usdoj.gov

    FOR THE DEFENDANT, HOANG XUAN LE:

                      CRAIG WILKE
                      LAW OFFICE OF CRAIG WILKE
                      305 NORTH HARBOR BOULEVARD
                      SUITE 216
                      FULLERTON, CALIFORNIA 92832
                      (714) 870-8900
                      craig@craigwilkelaw.com

                      SHEILA S. MOJTEHEDI
                      STRADLING, YOCCA, CARLSON & RAUTH, P.C.
                      660 NEWPORT CENTER DRIVE
                      SUITE 1600
                      NEWPORT BEACH, CALIFORNIA 92660
                      (949) 725-4000
                      sheila.mojtehedi@gmail.com

```
 1    SANTA ANA, CALIFORNIA; MONDAY, NOVEMBER 8, 2021; 1:31 P.M.

 2                          -oOo-

 3         (The following proceedings were had outside the

 4         presence of the prospective jury:)

 5              THE COURT:  We're on the record, Deborah, correct?

 6              All counsel are present.  The defendant is

 7    present.

 8              And, Counsel, is it acceptable now that I summon

 9    the jury from the hallway?

01:31:47  10              MR. SCALLY:  Yes, Your Honor.

11              THE COURT:  And Jurors Nos. 5 and 10 are going to

12    be called immediately.

13              And for your edification --

14              THE CLERK:  It's okay to bring them in,

01:31:57  15    Your Honor?

16              THE COURT:  -- that will be Shiel, Kim.

17         (The following proceedings were had in open court

18         in the presence of the prospective jury:)

19              THE COURT:  And thank you.

01:32:25  20              If you will take your former seats, it will be

21    appreciated.

22         (Pause)

23              THE CLERK:  "14," Your Honor, you said?

24              THE COURT:  14.

01:33:26  25              THE CLERK:  Okay.
```

*Deborah D. Parker, U.S. Court Reporter*

4

| | |
|---|---|
| 01:33:29 | 1    THE COURT:  Then, we're back on the record. |
| | 2    All counsel are present.  The defendant is present |
| | 3  and prospective jurors are present. |
| | 4    Ms. Newhoff, we're going to thank you and excuse |
| 01:33:40 | 5  you for cause and appreciate your attendance today.  And |
| | 6  you're free to go. |
| | 7    PROSPECTIVE JUROR:  Thank you. |
| | 8    THE COURT:  So, ladies and gentlemen, be patient |
| | 9  with us. |
| 01:33:49 | 10    We're going to bring up 14 more jurors for a |
| | 11  moment, have them seated and the next two jurors will be |
| | 12  seated in seat No. 5 and in seat No. 10. |
| | 13    *(Pause)* |
| | 14    THE COURT:  Are you Mr. Shiel? |
| 01:40:00 | 15    Mr. Shiel, would you come forward, sir. |
| | 16    Thank you. |
| | 17    And would you be kind enough to walk all the |
| | 18  way -- Mr. Shiel, if you will come down here on the end, |
| | 19  please, in the first row.  Would you go all the way to that |
| 01:40:16 | 20  vacant chair in the first row. |
| | 21    Thank you. |
| | 22    So there's two in that row.  And the next row, |
| | 23  Deb, there should be two more dots.  Well, then the third |
| | 24  row, there should be two dots.  Then, there's one dot in the |
| 01:40:47 | 25  third row, Deb, and then the vacant black chair. |

*Deborah D. Parker, U.S. Court Reporter*

5

01:41:00  1          *(Pause)*

2                  THE COURT:  Deb, we have a couple of seats right

3          up here in front, okay?

4                  Just first -- yeah.

01:41:14  5          *(Pause)*

6                  THE COURT:  All right.  Well, first of all,

7          welcome.  We know you've been sitting down below, and you're

8          the next group of 14.  And thank you for being so patient

9          with us.

01:41:30  10                 Deb, would you like to formally call the next

11         juror.  That would be Mr. Shiel for the record.

12                 THE CLERK:  Yes.  William Shiel.

13                 THE COURT:  And you would be seated in seat No. 5,

14         sir.

01:41:43  15                 THE CLERK:  Hannah Kim.

16                 THE COURT:  And, Ms. Kim, you should be seated in

17         seat No. 10.  Good afternoon.

18                 Let me start with Mr. Shiel.

19                 Mr. Shiel, were you able to hear all of our former

01:41:52  20         questions when you were in the jury room with this

21         electronic hook-up?

22                 PROSPECTIVE JUROR:  I was.

23                 THE COURT:  Okay.  Any questions that you care to

24         respond to, or is there anything on your questionnaire that

01:42:02  25         you would like to modify or change?

*Deborah D. Parker, U.S. Court Reporter*

01:42:04  1          And, first of all, thank you for so completely

2     filling out the questionnaire.

3               PROSPECTIVE JUROR:  Thank you.

4               THE COURT:  We need a microphone for the

01:42:20  5     gentleman.

6               There you go.  Thanks, Deb.

7               PROSPECTIVE JUROR:  I have no modifications to

8     make on my questionnaire.  I do have a question, however.

9               THE COURT:  Sure.

01:42:29 10               PROSPECTIVE JUROR:  You were kind enough to give

11     us instructions to not talk to people, et cetera, relating

12     to any matters --

13               THE COURT:  Right.

14               PROSPECTIVE JUROR:  -- in the case.  And

01:42:42 15     furthermore to admit only evidence that we hear in this

16     courtroom.

17          And I jog in Dana Point.  You did tell some things

18     about the case.  I jog there regularly and have for 30 years

19     or more.  And, probably, around 2019, I happened to be

01:43:09 20     jogging at Dana Point and there were helicopters, and,

21     et cetera.  And I don't know if this is relates to this

22     case, because that hasn't been specified, but full

23     disclosure that happened.

24               THE COURT:  Well, thank you.  We appreciate that.

01:43:25 25     That's exactly what we need.  I don't know if it involved

*Deborah D. Parker, U.S. Court Reporter*

01:43:30 1    this case or not.  But the point is, both counsel and I are

2    aware of that.  And as long as it didn't cause you to form

3    or express an opinion in your mind about the case and you're

4    willing to listen to evidence from the witness stand --

01:43:45 5                 PROSPECTIVE JUROR:  It's not, and I am.

6                 THE COURT:  Fair enough.  Then, that fundamental

7    question we keep asking is that:  Will you be fair and

8    impartial to both sides?

9                 PROSPECTIVE JUROR:  I will.

01:43:55 10                THE COURT:  And will you follow the law?

11                PROSPECTIVE JUROR:  I will.

12                THE COURT:  I'm going to turn you over to counsel

13   with my appreciation again in just a moment, but I would

14   also like to also speak to Ms. Kim so, Counsel, you can

01:44:03 15   examine both.

16                Ms. Kim, thank you for filling out the

17   questionnaire.

18                Are there any questions that we may have asked

19   this morning, or is there anything on your jury

01:44:16 20   questionnaire that you'd like to change or modify?

21                PROSPECTIVE JUROR:  No, I do not believe so, but I

22   do have strong opinion for the law enforcement.

23                THE COURT:  Okay.  Many people may have strong

24   opinions for or against law enforcement.  That's not the

01:44:38 25   issue.  The issue is:  Would you be fair in listening to the

8

01:44:44  1   evidence in this matter?  And do you understand my

2   hypothetical about the President of the United States?  If

3   the President came in, that President has no more

4   credibility than any citizen in a court of law.

01:45:03  5              Do you understand?

6              Let me say it again:  The President just walked in

7   the door.  Impressive.  The President, whoever that

8   President was, raises their hand.  They swear to tell the

9   truth.  And once they go to that witness stand, they are no

01:45:22 10   truthful or less truthful presumptively than any citizen in

11   America.

12              Am I clear about that?

13              PROSPECTIVE JUROR:  Yes.

14              THE COURT:  All right.  Counsel will question you

01:45:37 15   in just a moment.  But the fundamental question I have is

16   that -- I don't know what role law enforcement may or may

17   not play in this case.  But if you're going to automatically

18   believe anybody because of their profession, whether it's a

19   law enforcement officer or any other profession, just by

01:46:03 20   virtue of a title, then you shouldn't be sitting on this

21   case.

22              PROSPECTIVE JUROR:  Well, I do believe, you know,

23   just because of their profession, the law enforcement tend

24   to have more observant -- you know, when they're taking a

01:46:20 25   look at the same situation, they may then tend to be more

*Deborah D. Parker, U.S. Court Reporter*

9

01:46:25 1  observant than normal citizens.

2      THE COURT:  Some people feel the opposite.  Some

3  people feel law enforcement isn't or aren't credible.

4      But, Counsel, I'll let you inquire.

01:46:38 5      MR. WILKE:  Thank you, Your Honor.

6      Dr. Shiel, I just have a few questions.  Is it --

7  am I pronouncing your name correctly?

8      PROSPECTIVE JUROR:  Yes.

9      MR. WILKE:  You have medical training?

01:46:50 10     PROSPECTIVE JUROR:  I do.

11     MR. WILKE:  You will hear testimony -- if you're

12  selected as a juror in this case, you will hear testimony --

13     THE COURT:  Slow down.

14     MR. WILKE:  -- from both -- medical-type

01:47:03 15  testimony.  If selected as a juror in this case, could you

16  limit your consideration to the evidence you hear in court

17  and not rely on your own personal medical training in

18  determining whether the Government has proven its burden

19  beyond a reasonable doubt?

01:47:22 20     PROSPECTIVE JUROR:  Yes, I can.

21     MR. WILKE:  Could you hand the microphone to

22  Ms. Kim?

23     Just a couple of questions, Ms. Kim.  Your -- I

24  understood you to say that you would tend to believe a

01:48:00 25  law enforcement officer's testimony over the testimony of a

*Deborah D. Parker, U.S. Court Reporter*

01:48:04   1   non-law enforcement officer; is that correct?

2          PROSPECTIVE JUROR:  I believe so.

3          MR. WILKE:  And if Judge Carter instructed you

4   that the law requires you to evaluate the testimony of all

01:48:20   5   witnesses equally, regardless of their profession, could you

6   follow that instruction or would you still be guided by your

7   personal belief that law enforcement officers are more

8   trustworthy?

9          PROSPECTIVE JUROR:  I have to honestly say that,

01:48:35  10   you know, underneath my core values -- you know, my beliefs

11   are my beliefs.  And it's going, you know, help me make a

12   decision based on my past, you know, history, my

13   acquaintances, my friends.  I mean, you know, I'll try to be

14   fair; but, you know, in the end, I think I'll, you know,

01:48:57  15   somehow be persuaded by my beliefs.

16          MR. WILKE:  So am I understanding you correctly to

17   say that if you were instructed that the law requires you to

18   treat all witnesses the same way, your personal beliefs

19   would make it difficult for you to follow that instruction?

01:49:13  20          THE COURT:  It's not difficult.  It's whether

21   you're going to disobey that instruction by me.

22          PROSPECTIVE JUROR:  Well --

23          THE COURT:  In other words, will you follow my

24   instruction if I tell you in my instructions:  The witnesses

01:49:25  25   are to be treated equally under the law?

01:49:28  1         PROSPECTIVE JUROR:  I will follow the instruction.

       2         THE COURT:  Okay.

       3         MR. WILKE:  Okay.  But you understand that the

       4    function of the jury is to evaluate the credibility of

01:49:36  5    witnesses, correct?

       6         You understand that?

       7         PROSPECTIVE JUROR:  Correct.  But I will form --

       8    you know, based on the hearing, I will form my opinion.

       9         MR. WILKE:  And you'll do your best to follow the

01:49:51 10    instructions, correct, that Judge Carter gives you?

      11         PROSPECTIVE JUROR:  I will try to.

      12         THE COURT:  Not your best.  Let me clarify that,

      13    because we're not going to walk around this area now.  Will

      14    you follow my instructions that witnesses are treated

01:50:05 15    equally when they take the stand?

      16         PROSPECTIVE JUROR:  Yes.

      17         THE COURT:  All right.  Counsel?

      18         MR. WILKE:  Should I have any concern as defense

      19    counsel that you would -- you would accurately apply the

01:50:20 20    burden of proof?

      21         Do you understand the burden of proof?

      22         PROSPECTIVE JUROR:  No -- no.

      23         MR. WILKE:  If you were instructed that the

      24    Government has the burden of proof as to the crime beyond a

01:50:34 25    reasonable doubt, would you be able to follow that

01:50:38  1   instruction?

2        THE COURT:  Counsel, I think that's -- re-ask it.

3   I don't think the juror understands.  Just re-ask the same

4   question.

01:50:49  5        MR. WILKE:  If Judge Carter were to instruct you

6   that the Government has the burden of proof beyond a

7   reasonable doubt and if they fail to meet that burden, you

8   must find the defendant not guilty, could you follow that

9   instruction?

01:51:08 10        PROSPECTIVE JUROR:  I believe so.

11        MR. WILKE:  I'm sorry, ma'am.  Could you repeat

12   that answer?

13        PROSPECTIVE JUROR:  I believe so.

14        MR. WILKE:  You believe you could?

01:51:21 15        Now, you also expressed in your answers that you

16   do have a strong Christian faith, correct?

17        PROSPECTIVE JUROR:  Yes.

18        MR. WILKE:  Is there anything about this case and

19   the charges here that give you some concern that you would

01:51:37 20   have difficulty following the law, in light of your

21   Christian beliefs?

22        PROSPECTIVE JUROR:  Yeah.  I mean, I do believe --

23   you know, murder is not something that I, you know, condone,

24   or --

01:51:55 25        MR. WILKE:  That's universal.

01:51:55  1          PROSPECTIVE JUROR:  Yeah.

         2          MR. WILKE:  Nobody is condoning murder.

         3          PROSPECTIVE JUROR:  Yeah.  Or -- yeah, and I --

         4   this case, when I first heard it, actually, it was very

01:52:05  5   familiar, because when it happened -- you know, I heard it

         6   on the news -- the news coverage.  And I form [sic] my

         7   opinion back then, based on what I read.  And so I'm already

         8   coming in with some, you know --

         9          MR. WILKE:  You anticipated my next question,

01:52:26 10   which was:  So you read or saw -- did you read it in the

        11   newspaper?

        12          Did you see the TV reports?

        13          PROSPECTIVE JUROR:  I heard it on the news and the

        14   radio and then I read it, because, you know, it intrigued

01:52:38 15   me, because it was -- you know, back then, I guess it was --

        16   you know, it just triggered my interests.  Some news, yeah,

        17   than others.  You know, it intrigued my interest enough for

        18   me to look it up and read the story about it and the news.

        19          MR. WILKE:  And do you recall the news reports

01:53:02 20   what you read?  I don't want you to repeat them here in

        21   court; but as you sit here today, do you recall it?

        22          PROSPECTIVE JUROR:  Uh-huh.

        23          MR. WILKE:  Would you have difficulty putting

        24   those news reports out of your mind, if you were chosen as a

01:53:16 25   juror in this case?

*Deborah D. Parker, U.S. Court Reporter*

01:53:19  1            PROSPECTIVE JUROR:  I don't think so.

2            MR. WILKE:  I'm sorry.  Could you --

3            PROSPECTIVE JUROR:  I don't -- I already -- you

4     know, it's in my head, so it's hard to discount that.

01:53:27  5            MR. WILKE:  So what I understand you to be saying

6     is that it would be difficult for you to put the news

7     reports out of your mind, if you were chosen as a juror in

8     this case?

9            PROSPECTIVE JUROR:  Right.  Right.

01:53:37 10            MR. WILKE:  Okay.  I have no further questions,

11    Your Honor.

12            THE COURT:  Counsel?

13            MR. SCALLY:  No questions, Your Honor.

14            MR. WILKE:  May I have a moment?

01:53:46 15            THE COURT:  Excuse us, ladies and gentlemen, for

16    just a moment, please.

17         (Pause)

18            MR. WILKE:  We have a stipulation as to the last

19    juror.

01:54:04 20            THE COURT:  Is there a stipulation as to who,

21    Counsel?

22            MR. WILKE:  To Ms. Kim.

23            THE COURT:  Counsel, is that correct on the

24    Government's part?

01:54:11 25            MR. SCALLY:  Yes, Your Honor.

*Deborah D. Parker, U.S. Court Reporter*

01:54:12  1          THE COURT:  Ms. Kim, we're going to thank and

2     excuse you.  We appreciate you filling out the questionnaire

3     and we appreciate your answers.  You're excused from these

4     proceedings.

01:54:18  5          Will you call another juror.

6          THE CLERK:  Yes, Your Honor.

7          Joshua Murillo-Real.

8          THE COURT:  Mr. Real, if you would be kind enough

9     to take the seat that Ms. Kim occupied, please, seat No. 10.

01:54:42  10          And, sir, have you heard all the prior questions

11     when you were down in the jury assembly room?

12          PROSPECTIVE JUROR:  Yeah.

13          THE COURT:  Anything on the questionnaire that you

14     care to modify or change, or is there any question that

01:54:55  15     we've asked that would cause a response on your part?

16          PROSPECTIVE JUROR:  No.

17          THE COURT:  I want to thank you for filling out

18     the questionnaire so completely, sir.

19          I'll turn this over to counsel.

01:55:05  20          Counsel?

21          MR. WILKE:  Thank you, Your Honor.

22          Just a few questions, Mr. Real.  Is it "Real"?

23          PROSPECTIVE JUROR:  Yeah.

24          MR. WILKE:  So you have some experience in your

01:55:16  25     employment dealing with people with drug addiction?

*Deborah D. Parker, U.S. Court Reporter*

01:55:19   1              PROSPECTIVE JUROR:  Yes.

2              MR. WILKE:  Okay.  And from your questionnaire, is

3    it fair to say that you're frustrated in that experience?

4    Or how would you describe that experience in terms of how it

01:55:33   5    makes you feel about people with drug addiction?

6              PROSPECTIVE JUROR:  I'm indifferent, but if it

7    frustrates me where -- people with drug addiction that come

8    into work, they frustrate me.

9              MR. WILKE:  Where do you work at, sir?

01:55:59  10    PROSPECTIVE JUROR:  I work at a 7-Eleven.

11              THE COURT:  I didn't hear where you work, sir.

12              PROSPECTIVE JUROR:  7-Eleven.

13              MR. WILKE:  There may be evidence in this case

14    that witnesses also have drug use issues -- have used drugs

01:56:26  15    in the case.  Would that color the way you evaluate the

16    witness?

17              PROSPECTIVE JUROR:  No.

18              MR. WILKE:  Okay.  You also may hear evidence in

19    this case that the defendant, himself, has abused drugs.

01:56:46  20          Would that color your view of the defendant?

21              PROSPECTIVE JUROR:  It would not.

22              MR. WILKE:  Okay.  You could be fair and impartial

23    to defendant and judge him based on the charges, despite the

24    fact that you may hear evidence that he's used drugs?

01:57:01  25              PROSPECTIVE JUROR:  Yes.

*Deborah D. Parker, U.S. Court Reporter*

| | |
|---|---|
| 01:57:02 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 01:57:07 | 5 |

01:57:02   1          MR. WILKE:  Thank you, sir.  I have no further

2    questions.

3          THE COURT:  Counsel, on behalf of the Government?

4          MR. STAPLES:  No questions, Your Honor.

01:57:07   5          THE COURT:  The peremptory would now remain with

6    the defense.  This would be the third preemptory, if you

7    decide to exercise it.

8      *(Pause)*

9          MR. WILKE:  The defense would thank and excuse

01:57:45  10   Juror No. 2, Ms. Treanor.

11          THE COURT:  Ms. Treanor, thank you very much.

12   Appreciate your attendance today and appreciate the fact

13   that you've shared all this information on the

14   questionnaire.  That will remain confidential, by the way,

01:57:56  15   for everybody in the room.  We'll destroy these after we

16   select a jury.  Thank you.

17          And if you would call another juror, please, Deb.

18          THE CLERK:  Chris Beehler.

19          THE COURT:  Thank you, Mr. Beehler.

01:58:16  20          We got you all the way on the top row.  Once

21   again, Mr. Beehler, I know you were down below this morning.

22          Were you able to hear all the questions that were

23   asked?

24          PROSPECTIVE JUROR:  Yes, I was.

01:58:38  25          THE COURT:  And that fundamental question is

*Deborah D. Parker, U.S. Court Reporter*

01:58:40  1  there's anything on your questionnaire that you would like

2  to change or modify with our appreciation for filling it out

3  so completely?

4          PROSPECTIVE JUROR:  No.

01:58:48  5          THE COURT:  Would you be fair and impartial to

6  both sides?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  I mean, this is about as basic as all

9  these questions are about.

01:58:54 10          And would you follow my instructions at the end of

11  the case when I instruct you on the law?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  All right.  I'm going to turn you over

14  to counsel.

01:59:02 15          Counsel?

16          MR. WILKE:  Thank you, Your Honor.

17          Good afternoon, Mr. Beehler.  On your

18  questionnaire, you did express some concern about a

19  financial hardship, if chosen as a juror.  Could you

01:59:17 20  elaborate on that and explain what that hardship is?

21          PROSPECTIVE JUROR:  I wasn't sure what my

22  company's policy was on jury duty pay.  And I've asked that

23  and I'll be paid, so it's not a problem.

24          MR. WILKE:  But you would get paid?

01:59:28 25          PROSPECTIVE JUROR:  Yes.

01:59:29    1          MR. WILKE:  It would not present a problem?

            2          PROSPECTIVE JUROR:  No.

            3          THE COURT:  And I don't want to know your

            4    employer, but we should be thanking them.  But by the way, a

01:59:41    5    lot of these employers are in court all the time and looking

            6    for jurors like all hundred that we've gathered today.  So

            7    we'll just quietly express our appreciation at the end of

            8    the case to all you folks who have employers here.

            9          MR. WILKE:  I have no further questions to

01:59:57   10    Mr. Beehler.

           11          THE COURT:  Let me pass to the Government.

           12          MR. STAPLES:  No questions, Your Honor.

           13          THE COURT:  The Government -- strike that.

           14          Then, the peremptory would pass back to the

02:00:05   15    Government.

           16          MR. STAPLES:  One moment, please, Your Honor.

           17          THE COURT:  Certainly.

           18          MR. STAPLES:  The Government passes, Your Honor.

           19          THE COURT:  The peremptory would now pass to the

02:00:17   20    defense.  This would be the fourth peremptory if you decide

           21    to exercise such a peremptory.

           22          MR. WILKE:  The defense would thank and excuse

           23    Juror No. 8, Ms. Cooper.

           24          THE COURT:  I'm sorry?

02:00:39   25          MR. WILKE:  Juror No. 8, Ms. Cooper.

20

```
02:00:42   1              THE COURT:  Ms. Cooper, thank you very much.  Our

           2    appreciation.  You're free to go home.  Thank you, once

           3    again, for all the information you've shared with us.

           4              That was the fourth peremptory by the defense.

02:01:02   5              Deb, will you call an additional juror, please.

           6              THE CLERK:  Yes.

           7              THE COURT:  And it should be --

           8              THE CLERK:  Natalie Adams.

           9              THE COURT:  Ms. Adams, thank you very much.

02:01:17  10              If you would be kind enough to take the seat

          11    closest to me, which is on the bottom row.

          12              Let me stand up so I can see you.

          13         (Pause)

          14              THE COURT:  Once again, have you heard all the

02:01:43  15    prior questions that have been asked?

          16              PROSPECTIVE JUROR:  Yes.

          17              THE COURT:  Is there anything on your jury

          18    questionnaire that you'd like to change or modify?

          19              PROSPECTIVE JUROR:  Just one thing.  I think I had

02:01:52  20    said I would -- in the question that keeps coming up about

          21    the police officer, I think I said I would favor the police

          22    officer.  But hearing your example and the fact that this

          23    question has been brought up a lot, I wouldn't favor towards

          24    the police officer versus the --

02:02:08  25              THE COURT:  Treat people co-equally and then you'd
```

*Deborah D. Parker, U.S. Court Reporter*

02:02:10  1   judge their perception and credibility as individuals?

2               PROSPECTIVE JUROR:  Yes.

3               THE COURT:  Then I think that answers my next

4   question already, but I want to make sure.  Would you be

02:02:19  5   fair and impartial to both sides?

6               PROSPECTIVE JUROR:  Yes.

7               THE COURT:  Would you follow the law?

8               I want to thank you again for filling out the

9   questionnaire so completely.

02:02:24  10              And, Counsel, on behalf of the defense?

11              MR. WILKE:  Thank you, Your Honor.

12              Ms. Adams, in your questionnaire, you did respond

13  in the affirmative to the question about physical, mental or

14  emotional condition that might affect your ability.  And I'm

02:02:55  15  not asking you to restate that here.  But do you believe

16  that that condition would make it difficult for you to sit

17  on a case like this and listen to the type of evidence that

18  you would expect to hear in a case like this?

19              PROSPECTIVE JUROR:  No.

02:03:11  20              MR. WILKE:  Okay.  I have no further questions,

21  Your Honor.

22              THE COURT:  Counsel, on behalf of the Government?

23              MR. STAPLES:  No questions, Your Honor.

24              THE COURT:  Then the peremptory would remain with

02:03:25  25  the defense.  This would be the fifth peremptory, if the

02:03:29  1  defense exercises such a peremptory.

2       *(Pause)*

3            MR. WILKE:  Your Honor, the defense would thank

4  and excuse Juror No. 3, Mr. Rodriguez.

02:03:59  5            THE COURT:  Mr. Rodriguez, thank you very much.

6  You're free to go home.  And thank you once again for being

7  so complete with the questionnaire.  That information was

8  greatly appreciated.

9            PROSPECTIVE JUROR:  Thank you, Your Honor.

02:04:13  10            THE COURT:  Just one moment, Deb.

11       *(Pause)*

12            THE COURT:  Thank you, Deb.  If you would be so

13  kind to call another juror.

14            THE CLERK:  Yes, Your Honor.

02:04:24  15            Samantha Humphery.

16            THE COURT:  Thank you.  When you have the

17  microphone, once again, let me thank you for filling out the

18  questionnaire so completely.  Jury selection can take days.

19  And I really believe we'll have a jury today.

02:05:03  20            Is there anything on that questionnaire that you

21  care to modify or change?

22            PROSPECTIVE JUROR:  Just one thing.  I found out

23  my school district covers 10 days of paid jury service, so I

24  would not be paid for the entire trial.

02:05:24  25            THE COURT:  In the past -- and I can't state it

*Deborah D. Parker, U.S. Court Reporter*

23

02:05:26 1    with clarity, but when the school district is contacted by

2    the Court, usually they're very compliant.  Very willing.

3              PROSPECTIVE JUROR:  Okay.

4              THE COURT:  And plus, in terms of 10 actual days,

02:05:38 5    the case may conclude by that time.

6              PROSPECTIVE JUROR:  Well, this is day two, so I

7    would have eight days.  And I'm the sole provider for my

8    family of six.

9              THE COURT:  I'll let counsel take up that.  But as

02:05:49 10   far as pay is concerned, I think that can be resolved very

11   quickly.

12             Would you be fair and impartial to both sides?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Are you the sole provider?  Because it

02:06:02 15   states that you have a husband.

16             PROSPECTIVE JUROR:  Yes, I do.  We have four kids

17   under the age of nine.

18             THE COURT:  Is he employed?

19             PROSPECTIVE JUROR:  He works 10 hours a week.

02:06:11 20             THE COURT:  Is he employed?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Okay.  Once again, would you be fair

23   and impartial to both sides?

24             PROSPECTIVE JUROR:  Yes.

02:06:21 25             THE COURT:  Would you follow the law?

02:06:23  1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  I want to thank you for this

3    questionnaire.  It's very complete.  It saves hours of

4    questioning each juror, so it's very much appreciated.

02:06:34  5          Let me turn this over to counsel.

6          Counsel?

7          MR. WILKE:  Thank you, Your Honor.

8          Ms. Humphrey, your brother works for federal

9    law enforcement?

02:06:42 10          PROSPECTIVE JUROR:  Yes.

11          MR. WILKE:  Are you close to him?

12          PROSPECTIVE JUROR:  Yes.

13          MR. WILKE:  How often do you see him?

14          THE COURT:  Counsel, slow down.

02:06:49 15          MR. WILKE:  How often do you see him?

16          PROSPECTIVE JUROR:  About once a month.

17          MR. WILKE:  Do you discuss his work -- does he

18    discuss his work with you?

19          PROSPECTIVE JUROR:  At times, yes.

02:06:56 20          MR. WILKE:  Does he work here in Orange County?

21          PROSPECTIVE JUROR:  No.

22          MR. WILKE:  What county does -- where does he

23    work?

24          PROSPECTIVE JUROR:  L.A. County.

02:07:03 25          MR. WILKE:  But for the federal --

| | | |
|---|---|---|
| 02:07:08 | 1 | (Court Reporter requests clarification for the |
| | 2 | record.) |
| | 3 | MR. WILKE:  He works for federal law enforcement, |
| | 4 | correct? |
| 02:07:11 | 5 | PROSPECTIVE JUROR:  Yes. |
| | 6 | MR. WILKE:  Does he ever express his view about |
| | 7 | federal prosecutors? |
| | 8 | PROSPECTIVE JUROR:  Yes. |
| | 9 | MR. WILKE:  Does ever express his view about |
| 02:07:19 | 10 | federal defense lawyers? |
| | 11 | PROSPECTIVE JUROR:  Yes. |
| | 12 | THE COURT:  Based on your conversations with your |
| | 13 | brother, are your views about either federal prosecutors or |
| | 14 | federal defense lawyers colored by that -- discussions with |
| 02:07:35 | 15 | your brother? |
| | 16 | PROSPECTIVE JUROR:  No, I don't think so. |
| | 17 | MR. WILKE:  Okay.  You'd treat both sides the |
| | 18 | same, essentially? |
| | 19 | PROSPECTIVE JUROR:  Yes. |
| 02:07:47 | 20 | MR. WILKE:  Okay.  The -- if Judge Carter were |
| | 21 | unable to get you paid for more than 10 days, can you |
| | 22 | explain briefly how that would affect you, financially? |
| | 23 | PROSPECTIVE JUROR:  If he is able to get me paid? |
| | 24 | MR. WILKE:  If he were not able to get you paid. |
| 02:08:10 | 25 | THE COURT:  By the way, I don't know your school |

02:08:11  1    district.  I don't know if I can do that, frankly.

2              PROSPECTIVE JUROR:  Correct.  And our contract, it

3    says 10 days, so I don't know how lenient they are.

4              THE COURT:  Well, they'll be down here talking to

02:08:23  5    us about that.

6              PROSPECTIVE JUROR:  Okay.  We wouldn't be able to

7    pay rent.

8              MR. WILKE:  Okay.  I have no further questions,

9    Your Honor.

02:08:35 10              THE COURT:  Counsel?

11              MR. SCALLY:  One moment, please, Your Honor.

12         (Pause)

13              MR. STAPLES:  No questions, Your Honor.

14              MR. WILKE:  May I have a moment to speak to

02:08:45 15    counsel, Your Honor?

16              THE COURT:  Certainly.  We'll be right back with

17    you.  Let them discuss this.  And by the way, I don't know

18    if I would be successful or not.  In the past, most school

19    districts, if it's only a couple more days, have been very

02:08:55 20    amenable, but we're not going to put you in a position of

21    financial hardship.

22              MR. WILKE:  I think the parties would stipulate.

23              THE COURT:  Counsel.

24              MR. STAPLES:  Based on hardship, the Government

02:09:13 25    would stipulate, Your Honor.

27

02:09:15  1          THE COURT:  Ms. Humphrey, we're going to thank and

         2  excuse you.  Thank you very much.  Thank you for your

         3  attendance today.

         4          PROSPECTIVE JUROR:  Thank you.

02:09:42  5          THE COURT:  Deb, if you would be kind enough to

         6  call another juror, please.

         7          THE CLERK:  Catalino Ulep.

         8          THE COURT:  No. 3.

         9          MR. WILKE:  Could we get the juror's name again,

02:09:46 10  Your Honor?

        11          THE COURT:  It's Ulep.  The first name is

        12  Catalino, C-A-T-A-L-I-N-O; last name Ulep, U-L-E-P.

        13          Make sure, Counsel, you have that questionnaire.

        14          Counsel, on behalf of the Government as well?

02:10:13 15          MR. STAPLES:  Yes, Your Honor.

        16          THE COURT:  Sir, you were down in the jury

        17  assembly room.  And the same question:  I want to make

        18  certain you heard all the questions that we were asking in

        19  court this morning?

02:10:24 20          PROSPECTIVE JUROR:  Yes.

        21          THE COURT:  And are there any of those questions

        22  that you care to respond to or would you like to change any

        23  portion of your jury questionnaire or modify it in any way,

        24  because you've already given us a tremendous amount of

02:10:40 25  information through the questionnaire?

*Deborah D. Parker, U.S. Court Reporter*

```
02:10:41    1              PROSPECTIVE JUROR:  No.

            2              THE COURT:  Would you be fair and impartial to

            3    both sides in this case?

            4              PROSPECTIVE JUROR:  Yes.

02:10:46    5              THE COURT:  Would you follow the law?

            6              PROSPECTIVE JUROR:  Yes.

            7              THE COURT:  I'm going to turn you over to counsel,

            8    sir.  Thank you.

            9              Counsel, on behalf of the defense?

02:10:59   10         (Pause)

           11              MR. WILKE:  Good afternoon, Mr. Ulep.

           12              Just a couple of questions.  You did express some

           13    opinions about having strong feelings about people who use

           14    illegal drugs.

02:11:18   15              Do you recall the answer to that question?

           16              PROSPECTIVE JUROR:  Yes.

           17              MR. WILKE:  Okay.  So I asked this question

           18    earlier of another juror that -- if you heard evidence that

           19    the defendant himself had used illegal drugs, could you

02:11:33   20    still evaluate the evidence about the crime he's charged

           21    with?

           22              PROSPECTIVE JUROR:  No.

           23              MR. WILKE:  You would hold that against him that

           24    he had used illegal drugs in evaluating whether he was

02:11:46   25    guilty or not guilty of murder?
```

02:11:47  1              PROSPECTIVE JUROR:  No.

        2              MR. WILKE:  Okay.  If I'm not -- if I can just

        3      maybe rephrase my question in a clearer way.

        4              THE COURT:  Counsel, I think that this has been

02:12:10  5      answered on the questionnaire.  And I think you're getting

        6      into specific facts about this case.  I'm going to preclude

        7      this.

        8              Now, your next question.

        9              MR. WILKE:  Okay.  Could you be fair to the

02:12:20  10     defendant in this case, sir?

        11              PROSPECTIVE JUROR:  Yes.

        12              MR. WILKE:  Okay.  And could you be fair --

        13              THE COURT:  They can hear me now downstairs?

        14              THE CLERK:  Yes.

02:12:38  15              THE COURT:  I'm speaking into the microphone, so

        16     something went wrong.

        17              Counsel, they just advised they couldn't hear me

        18     downstairs.  Now they can.

        19              MR. WILKE:  Could you be fair to the defendant in

02:12:50  20     this case, even if you heard evidence that the defendant had

        21     used illegal drugs?

        22              THE COURT:  Counsel, I've already made that

        23     ruling.  You have a questionnaire.

        24              MR. WILKE:  I'm just trying to get

02:13:02  25     clarification --

02:13:03  1          THE COURT:  I'm not going to let you expand upon

2    with specifics involved in this case, whether he has or has

3    not.  That's a specific pinpoint piece of evidence.  It's

4    improper.

02:13:10  5          MR. WILKE:  Can I seek clarification --

6          THE COURT:  Counsel, there is no clarification.

7    Move on with your next question now.

8          MR. WILKE:  Okay.  Mr. Ulep, you made the

9    statement in your questionnaire:  "Drugs are illegal, so

02:13:24 10    it's their own decision."

11          Do you recall that answer?

12          PROSPECTIVE JUROR:  I think so.

13          MR. WILKE:  Can you just tell me what you meant by

14    that?

02:13:36 15          PROSPECTIVE JUROR:  Well, if it's drugs is

16    illegal, then it's illegal.  I mean, you shouldn't be using

17    it.

18          MR. WILKE:  Okay.

19          THE COURT:  All right, Mr. Wilke.

02:13:47 20          MR. WILKE:  I have no further questions,

21    Your Honor.

22          THE COURT:  Counsel, on behalf of Government?

23          MR. STAPLES:  No questions, Your Honor.

24          THE COURT:  The peremptory will now pass back to

02:13:54 25    the Government.  This will be the fourth peremptory if you

31

02:13:54  1    decide to exercise it.

2              MR. STAPLES:  The Government accepts the panel as

3    presently constituted, Your Honor.

4              THE COURT:  The peremptory now passes to the

02:14:01  5    defense.  This will be the sixth peremptory, if the defense

6    chooses to exercise it.

7              MR. WILKE:  May I have a moment, Your Honor?

8              THE COURT:  Certainly.

9         (Pause)

02:14:16  10             MR. WILKE:  The defense would thank and excuse

11    Juror No. 2, Mr. Beehler.

12             THE COURT:  Mr. Beehler, thank you very much, sir.

13    And appreciate, not only the questionnaire, but the

14    thoroughness of it.  That was a lot of information.

02:14:29  15             And, Debbie, if you'd be so kind, would you call

16    another juror, please.

17             THE CLERK:  Yes, Your Honor.

18             Colby Clampitt.

19             THE COURT:  Thank you.

02:14:45  20             Mr. Clampitt, if you would be so kind to take seat

21    No. 2.  It's up in that upper -- please.

22        (Pause)

23             THE COURT:  Mr. Clampitt, once again, if you

24    heard -- Whoops, I'm sorry.  We'll get that microphone for

02:15:09  25    you.

*Deborah D. Parker, U.S. Court Reporter*

02:15:11  1          PROSPECTIVE JUROR:  I've got it.

2          THE COURT:  Okay.  Thank you, sir.  I appreciate

3     it.

4          When you were down in the jury room, could you

02:15:16  5     hear all of the questions that were asked?

6          PROSPECTIVE JUROR:  Yes, sir.

7          THE COURT:  And is there any question you'd care

8     to respond to or are there any portions of the questionnaire

9     you care to modify or change?

02:15:27  10          PROSPECTIVE JUROR:  Yeah, I forgot to add.  I have

11     two kids under two.  And I have to be at their daycare

12     before 3:00 o'clock; otherwise, they charge me $2 a minute.

13     It's like $2,000 a month.

14          THE COURT:  Yeah, I've heard that.

02:15:43  15          Counsel, I'd also note and have you each look at

16     Question No. 40 and then look at the follow-up on page 5 at

17     Question 40.

18          MR. STAPLES:  The Government would stipulate,

19     Your Honor.

02:16:14  20          THE COURT:  Counsel?

21          MR. WILKE:  May I follow up, just a couple of

22     questions, with Mr. Clampitt?

23          THE COURT:  No, you, two, can have a discussion

24     about this, but I believe Question 40 --

02:16:32  25          Counsel, I'll let you follow up on this, but

*Deborah D. Parker, U.S. Court Reporter*

33

| | | |
|---|---|---|
| 02:16:34 | 1 | briefly now. |
| | 2 | MR. WILKE:  Just a couple of questions to clarify. |
| | 3 | Mr. Clampitt, I completely appreciate your |
| | 4 | daycare -- |
| 02:16:41 | 5 | THE COURT:  Counsel, your question. |
| | 6 | MR. WILKE:  -- your issue, and I just want to |
| | 7 | follow up on that. |
| | 8 | Your wife is currently not working? |
| | 9 | PROSPECTIVE JUROR:  She actually got a job last |
| 02:16:49 | 10 | week. |
| | 11 | MR. WILKE:  She did get a job last week. |
| | 12 | PROSPECTIVE JUROR:  Yeah. |
| | 13 | MR. WILKE:  Does her job allow her to pick up your |
| | 14 | children? |
| 02:16:55 | 15 | PROSPECTIVE JUROR:  No.  Not every day. |
| | 16 | MR. WILKE:  I'd stipulate, Your Honor. |
| | 17 | THE COURT:  Counsel, stipulated to by the |
| | 18 | Government? |
| | 19 | MR. STAPLES:  I'm sorry, Your Honor.  Yes, we |
| 02:17:05 | 20 | stipulate. |
| | 21 | THE COURT:  Sir, we're going to thank and excuse |
| | 22 | you.  I think Question 40 was self-evident.  Appreciate it. |
| | 23 | Deb, would you call another juror, please. |
| | 24 | THE CLERK:  Ana Pasillas. |
| 02:17:32 | 25 | THE COURT:  Sir, thank you again. |

*Deborah D. Parker, U.S. Court Reporter*

|          |    |                                                      |
|----------|----|------------------------------------------------------|
| 02:17:34 | 1  | Ms. Pasillas.  Thank you.  If you would be so kind   |
|          | 2  | to take seat No. 2.                                  |
|          | 3  | MR. WILKE:  I'm sorry.  Could we repeat the          |
|          | 4  | juror's name?                                        |
| 02:17:47 | 5  | THE COURT:  It's Ana Pasillas, P-A-S-I-L-L-A-S.      |
|          | 6  | MR. WILKE:  Thank you, Your Honor.                   |
|          | 7  | THE COURT:  First of all, let me thank you for       |
|          | 8  | filling out the questionnaire so completely.         |
|          | 9  | PROSPECTIVE JUROR:  Thank you.                       |
| 02:18:05 | 10 | THE COURT:  Once again, have you heard all of the    |
|          | 11 | questions asked by the Court and counsel when you were |
|          | 12 | downstairs in the jury assembly room?               |
|          | 13 | PROSPECTIVE JUROR:  Yes, Your Honor.                |
|          | 14 | THE COURT:  Are there any answers that you'd care   |
| 02:18:19 | 15 | to share with us, based upon those questions?  Or are there |
|          | 16 | any modifications that you would make to your questionnaire |
|          | 17 | or any changes?                                      |
|          | 18 | PROSPECTIVE JUROR:  No changes, Your Honor.  But    |
|          | 19 | one of the names on the witness list was familiar.  |
| 02:18:36 | 20 | THE COURT:  Could you tell us who that person was?  |
|          | 21 | PROSPECTIVE JUROR:  The name is Gary Logalbo.       |
|          | 22 | THE COURT:  And your association with that person?  |
|          | 23 | MR. WILKE:  If it's the same person, he worked in   |
|          | 24 | the same office.                                     |
| 02:18:50 | 25 | THE COURT:  They work in the same office?           |

*Deborah D. Parker, U.S. Court Reporter*

02:18:51  1              PROSPECTIVE JUROR:  Yes.

          2              THE COURT:  You're with the Orange County District

          3    Attorney's Office?

          4              PROSPECTIVE JUROR:  Yes.

02:18:56  5              THE COURT:  What position do you hold there?

          6              PROSPECTIVE JUROR:  Law office supervisor.

          7              THE COURT:  You're the supervisor.  The supervisor

          8    of family support, or --

          9              PROSPECTIVE JUROR:  Support staff for three units.

02:19:08 10              THE COURT:  The support --

         11              MR. WILKE:  Support staff.

         12              THE COURT:  The support staff?

         13              MR. WILKE:  Yes.

         14              THE COURT:  So you would be going back to that

02:19:14 15    office, when we're not in session, in the District

         16    Attorney's Office?

         17              PROSPECTIVE JUROR:  Yes.

         18              THE COURT:  And you've noted that on Question 27?

         19              MR. WILKE:  Yes.

02:19:23 20              THE COURT:  Right.  Let me turn you over to the

         21    counsel.

         22              MR. WILKE:  Thank you, Your Honor.

         23              THE COURT:  Counsel.

         24              PROSPECTIVE JUROR:  Ms. Pasillas, I appreciate

02:19:31 25    your thorough responses to the questionnaire.  You

02:19:35  1  repeatedly indicated in your questionnaire some bias toward

2  law enforcement.

3           Is that fair?

4           PROSPECTIVE JUROR:  Yes.

02:19:45  5           MR. WILKE:  Would you -- do you believe that if

6  were seated as a juror in this case you would carry that

7  bias over into on your view of the evidence and your

8  deliberations?

9           PROSPECTIVE JUROR:  Yes.  Honestly, yes.

02:20:00 10           MR. WILKE:  I have no further questions,

11 Your Honor.

12           THE COURT:  Counsel, on behalf of the Government?

13           MR. STAPLES:  No, no questions.

14           THE COURT:  Counsel?

02:20:06 15           MR. WILKE:  May we have a moment?

16           MR. STAPLES:  We would stipulate, Your Honor.

17           THE COURT:  Counsel [sic], we're going to thank

18 and excuse you.  Thank you for being so candid and honest.

19 That's just as great a service if you would have been with

02:20:13 20 us for the next 8 to 10 or 12 days.

21           Call another juror, please.

22           THE CLERK:  Michael Morgan.

23           THE COURT:  Mr. Morgan, if you would be so kind to

24 take that top seat.  It would be seat No. 2, please.

02:20:51 25           Mr. Morgan, hopefully, you've got a microphone up

*Deborah D. Parker, U.S. Court Reporter*

02:20:54  1    there.  Once again, the same simple question:  Did you hear

2    all the questions asked when you were sitting in the jury

3    assembly room?  And are there any answers that you'd care to

4    modify to your questionnaire or change?

02:21:08  5              PROSPECTIVE JUROR:  I did.  And I don't.

6              THE COURT:  Okay.  Now, on Question No. 40, I

7    wanted to ask -- I know you're an estimator.  Are you

8    salaried or do you get your compensation by job bid?

9              PROSPECTIVE JUROR:  I get compensation by job

02:21:29  10   performance and bid, yes.

11             THE COURT:  Performance is different.  In other

12   words, are you on a salary, right now?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  So you're in a bidding process and you

02:21:38  15   get paid by the bid?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Would you be paid anything during the

18   term of this jury service?

19             PROSPECTIVE JUROR:  Yes.  My company does pay for

02:21:51  20   it.

21             THE COURT:  Okay.  I want to thank your company

22   whoever and after [sic].  If you are selected, I'll promise

23   you, I'll be writing notes to --

24             PROSPECTIVE JUROR:  It's the hardship that may

02:21:59  25   come.  If I miss two weeks of bids, that could be three

02:22:03  1    months of work.

2             THE COURT:  You know that we're in session

3    intermittently.  We wanted to get started.  We recognize

4    that Thanksgiving holiday --

02:22:11  5            PROSPECTIVE JUROR:  I understand that.

6             THE COURT:  -- but we really think that there's a

7    good chance the case will be submitted to you the week of

8    December 8th, but we wanted to be safe and say

9    December 13th, because there is every likelihood of that as

02:22:22 10   well.

11            Let me turn you over to counsel.

12            Counsel.

13            MR. WILKE:  Just a moment, Your Honor.

14            THE COURT:  And it would be Michael Morgan,

02:22:29 15   M-O-R-G-A-N.  And I want to make sure you've got that

16   questionnaire and you've had time to look at it, so let's

17   just take a moment for you to find that questionnaire.

18       *(Pause)*

19            THE COURT:  Counsel, do you have that

02:23:16 20   questionnaire also?

21            MR. WILKE:  I apologize for the delay.  There's no

22   problem.

23            Mr. Morgan, just a quick follow-up.  So if you

24   were selected as a juror on this case, I understand that

02:23:27 25   you're going to still get paid at work, correct?

*Deborah D. Parker, U.S. Court Reporter*

02:23:29    1          PROSPECTIVE JUROR:  Yes.  Correct.

2          THE COURT:  Was your concern that if you're not

3     there to give estimates for your company, your company will

4     lose work?

02:23:37    5          Is that the concern?

6          PROSPECTIVE JUROR:  Yes.  That is exactly it.  I'm

7     the sole estimator for the company.

8          MR. WILKE:  Okay.  And can you work on weekends?

9     Can you do those estimates on weekends, in order to maintain

02:23:50   10     work for the company?

11          PROSPECTIVE JUROR:  We do all city, public works

12     estimate, usually, between 10:00 and 2:00, Monday through

13     Friday.

14          MR. WILKE:  Is there anybody else at the company

02:24:01   15     that can fill that role?

16          PROSPECTIVE JUROR:  No.  Like I said, I'm the sole

17     estimator/project manager.

18          MR. WILKE:  Okay.  Does that fact give you some

19     concern about your ability to devote your full attention to

02:24:22   20     this case?

21          PROSPECTIVE JUROR:  Absolutely, because I have 14

22     guys that will not work if I do not get the work.

23          MR. WILKE:  Okay.  If you were chosen in spite of

24     that, would you be able to listen to the evidence and give

02:24:39   25     your full attention to what's going on here in court?

02:24:44   1                    PROSPECTIVE JUROR:  I would try.

           2                    MR. WILKE:  We appreciate that.  Would you --

           3                    THE COURT:  All right.  Counsel, that question has

           4      been answered now.

02:24:52   5                    MR. WILKE:  That's fine.

           6                    THE COURT:  Counsel, on behalf of the Government?

           7                    MR. STAPLES:  Because we have no understanding of

           8      the work you do, how many bids would you say you would get

           9      in a two-week period?

02:25:04  10                    PROSPECTIVE JUROR:  I average about three a day,

          11      so about 15 -- about 30 in two weeks.

          12                    MR. STAPLES:  And so how big of an impact would it

          13      be to miss two weeks?

          14                    PROSPECTIVE JUROR:  Two weeks of bids could

02:25:18  15      calculate to two months of work very easily.

          16                    MR. STAPLES:  Okay.  And that's not something you

          17      can make up when you got done?

          18                    PROSPECTIVE JUROR:  No.

          19                    THE COURT:  Counsel, I don't think this is the

02:25:26  20      issue between the two of you.  We have a very generous

          21      company who is willing to pay for most, if not all, of this

          22      time period.  This is not a financial hardship.

          23                    MR. STAPLES:  I have no further questions.

          24                    MR. WILKE:  No further questions.

02:25:41  25                    THE COURT:  The peremptory would now remain with

02:25:45   1    the defense.  This would be seventh peremptory, if you

           2    decide to now exercise it.

           3            MR. WILKE:  May I have a moment, Your Honor?

           4        *(Pause)*

02:26:23   5            MR. WILKE:  Defense would thank and excuse

           6    Juror No. 2, Mr. Morgan.

           7            THE COURT:  Mr. Morgan, thank you very much, sir.

           8            Once again, thank you for the completeness of the

           9    questionnaire.  I can't tell you how much appreciated that

02:26:37  10    is.  It saves literally days of endless questions.

          11            Would you call another juror, please.

          12            THE CLERK:  Yes, Your Honor.

          13            Humaira Akhtar.

          14            THE COURT:  Would you be kind enough to be seated

02:26:53  15    in the top row in the second seat, please.

          16        *(Pause)*

          17            THE COURT:  And Ms. Akhtar, if you would be

          18    seated.

          19            First of all, have you heard all the questions

02:27:24  20    that we've asked when you were sitting down below in the

          21    jury assembly room?

          22            PROSPECTIVE JUROR:  Yes, I did.

          23            THE COURT:  Are there any questions that you'd

          24    care to respond to or would you like to change the answers

02:27:35  25    to your questionnaire or modify your questionnaire in any

42

02:27:38  1    way?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Let me ask about Question 40, because

4    it said your husband will be having an angiogram done on the

02:27:48  5    8th, which is today's date?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Is he okay?

8              PROSPECTIVE JUROR:  Yes.  I called him.  My son

9    was with him.

02:27:55  10             THE COURT:  I see.  But you came here to court?

11             PROSPECTIVE JUROR:  Yeah.

12             THE COURT:  We thank you for that.  I wish all of

13   us might have caught that beforehand.  We probably could

14   have handled this much differently, so my apologies to you.

02:28:10  15             PROSPECTIVE JUROR:  No, thank you so much for

16   that.

17             THE COURT:  I hope he's doing well.

18             You also expressed some concern about

19   law enforcement in the recent past.  Does that come from

02:28:26  20   some dealings with this country or some other country?

21             PROSPECTIVE JUROR:  In this country.

22             THE COURT:  Okay.  And there's something that

23   would cause you to question some of the law enforcement?

24             PROSPECTIVE JUROR:  No, not exactly that.  There

02:28:43  25   was certain incidents where law enforcement was biased.

*Deborah D. Parker, U.S. Court Reporter*

02:28:48  1              THE COURT:  I see.

        2              PROSPECTIVE JUROR:  But I don't think it is always

        3    like that.

        4              THE COURT:  Okay.  Then let me turn you over to

02:28:56  5    each counsel.  And let me start with the defense in this

        6    matter.

        7              MR. WILKE:  Thank you.

        8              Is it Dr. Akhtar?

        9              PROSPECTIVE JUROR:  Yes.

02:29:05 10              MR. WILKE:  You have medical training?

       11              PROSPECTIVE JUROR:  Excuse me?

       12              MR. WILKE:  You have medical training?

       13              PROSPECTIVE JUROR:  Yes.  I'm a doctor.

       14              MR. WILKE:  Okay.  Would you -- could you

02:29:17 15    consider -- you'll hear medical evidence in this case.  Can

       16    you consider that evidence on its own and not add to the

       17    evidence, based on your own medical training?

       18              PROSPECTIVE JUROR:  No.  No.  Basically --

       19              THE COURT:  Just a moment.  Physical or

02:29:38 20    psychological?  I don't know.

       21              MR. WILKE:  Well, I can clarify.  I understand you

       22    have training.  You're a doctor, and an obstetrician more

       23    specifically, correct?

       24              PROSPECTIVE JUROR:  Yes.

02:29:49 25              THE COURT:  But with that, you have, for instance,

*Deborah D. Parker, U.S. Court Reporter*

02:29:53  1  specialized knowledge in anatomy and medicine and things

2  like that, correct?

3        PROSPECTIVE JUROR:  Yes.  But I don't have any

4  experience about forensic medicine.

02:30:07  5        MR. WILKE:  Nothing with forensic medicine?

6        PROSPECTIVE JUROR:  Nothing with forensic

7  medicine.

8        MR. WILKE:  Okay.  I guess my question is -- the

9  only thing I'm trying to ensure -- is that outside evidence

02:30:18 10  isn't brought into the jury room and that the jury only

11  evaluates this case based on the evidence presented here in

12  court.  That's what I'm trying to get at.

13        Do you believe that your training as a doctor

14  would create some risk of you bringing evidence into the

02:30:34 15  jury room that wasn't presented here in court?

16        PROSPECTIVE JUROR:  No, I don't think so.

17        MR. WILKE:  Okay.  And then, finally, you did --

18  and I don't need you to repeat the specifics of it, but you

19  did express a view about some medical conditions that you

02:30:51 20  have?

21        PROSPECTIVE JUROR:  Yes.

22        MR. WILKE:  Do you believe those conditions would

23  make it difficult for you to sit as a juror to the degree

24  that it would cause you too much discomfort or distraction?

02:31:08 25        PROSPECTIVE JUROR:  Too much of discomfort because

45

02:31:12   1    I have blood pressure.  And about few months back, I had to

           2    go to ER.  And sometimes my blood pressure shoots very high;

           3    sometimes it goes down.  And I've ample -- couple of

           4    appointments coming in future.  This is about my blood

02:31:33   5    pressure.  And I have very severe pain on my left shoulder.

           6    And I'm seeing an orthopedic physician, and I'm also having

           7    physical therapy done, which is very aggressive one.

           8            So I will miss all my appointments.  And it's very

           9    hard to get appointments now because the doctors were all

02:31:58  10    backlogged because of the pandemic.  If I cancel my

          11    appointments now, I'll get maybe the appointments, again,

          12    after two months.

          13            So I'm very much in pain, and I'm not well.  I

          14    wish I could be here, but, unfortunately, I'm not well.

02:32:19  15            THE COURT:  Why don't you two have a discussion

          16    for a moment, if you choose to?

          17        (Pause)

          18            MR. STAPLES:  We would stipulate, Your Honor, on

          19    hardship.

02:32:26  20            MR. WILKE:  We would stipulate.

          21            THE COURT:  We're going to thank and excuse you,

          22    Doctor.  You're very much appreciated.  And thank you for

          23    sharing so much of this information, especially the personal

          24    information.

02:32:33  25            You're excused from these proceedings.

*Deborah D. Parker, U.S. Court Reporter*

02:32:35　1　　　　　　PROSPECTIVE JUROR:  Thank you, Your Honor.  Thank

2　you so much.

3　　　　　　THE COURT:  And if you'd call another juror,

4　please.

02:32:45　5　　　　　　THE CLERK:  Ghada Samuel.

6　　　　　　THE COURT:  And, Counsel, it would be Ghada,

7　G-H-A-D-A; Samuel, S-A-M --

8　　　　　　Is that correct, Deb?

9　　　　　　THE CLERK:  Yes, Your Honor.

02:33:01　10　　　　　　THE COURT:  Samuel, S-A-M-U-E-L.

11　　　　　　And I want to make sure that each of you have had

12　an opportunity to find that questionnaire, before we begin.

13　　　　　　If you would be so kind -- thank you very much.

14　If you will take seat No. 2.  That's now the hot seat, okay?

02:33:24　15　　　　　　Now, Deb, if we could, we're going to ask for 12

16　more jurors, but we're going to take a recess right after

17　this.  That makes a logical trade-off.

18　　　　　　So, ladies and gentlemen, what we'll do is, we'll

19　finish the questioning of you Ms. Samuel and then, we're

02:33:39　20　going to take a 15-minute recess.  All of you are going to

21　go use the restroom.

22　　　　　　I know I got a couple jurors who we haven't

23　called.  Just return to your seat, but we're going to call

24　up 12 more jurors during that interim period of time.  We'll

02:33:55　25　have a jury today.

47

02:33:58   1                  Okay.  Do you have that questionnaire, Counsel,

           2    for both parties?

           3                  MR. WILKE:  Yes, Your Honor.

           4                  THE COURT:  Take a moment and look at it.

02:34:18   5         (Pause)

           6                  THE COURT:  While they're looking at that, on

           7    Question 37, you said you had difficulty with traditional

           8    terms and long words.  Please don't be concerned.  It's my

           9    duty to make those understandable.  It's my duty to make

02:34:32  10    certain that you're correctly instructed on the law and to

          11    do that in a way that it's understandable.  So don't worry

          12    about legal terms.

          13                  Then, Counsel, on behalf of the defense.

          14                  MR. WILKE:  Thank you, Your Honor.

02:34:50  15                  Ms. Samuel?

          16                  PROSPECTIVE JUROR:  Yes.

          17                  MR. WILKE:  In response to the question about

          18    whether you would be more likely to believe the testimony of

          19    a law enforcement officer over the testimony of another

02:35:00  20    witness, you responded "Maybe, yes," exclamation point,

          21    correct?

          22                  PROSPECTIVE JUROR:  Yes.

          23                  MR. WILKE:  Can you explain what you meant by

          24    that?

02:35:08  25                  PROSPECTIVE JUROR:  First off, I respect all the

02:35:11  1  policemen and so on.  So I think they're here for -- to give

2  us protection.  And to enforce the law, that's why I would

3  say I'm going to take, like, their testimony over

4  non-officer person.

02:35:26  5         MR. WILKE:  Okay.  If the Court were to instruct

6  you that you should treat all witnesses and evaluate their

7  testimony equally, would you have difficulty applying that

8  explanation as to the testimony of a law enforcement

9  officer?

02:35:40  10        PROSPECTIVE JUROR:  To be honest, yes, possibly.

11        THE COURT:  I want to be very specific then.  If I

12  instruct you that witnesses are to be treated co-equally in

13  terms of at least their taking the witness stand and then

14  you'll decide if they're telling the truth or what their

02:36:00  15  perception is.  Would you be inclined not to follow my

16  instruction?

17        PROSPECTIVE JUROR:  Honestly?

18        THE COURT:  Absolutely.  You do as much good

19  telling us things that you would of sitting as a juror.

02:36:17  20        PROSPECTIVE JUROR:  It's out of my hands

21  sometimes.  It's going to be like inner way thinking of

22  believing that might affect my way of telling or to giving

23  my, you know, opinion.

24        THE COURT:  Okay.  And thank you.

02:36:37  25        MR. WILKE:  I have no further questions.

*Deborah D. Parker, U.S. Court Reporter*

02:36:38  1          THE COURT:  Counsel, on behalf of the Government?

       2          MR. STAPLES:  No questions, Your Honor.

       3          MR. WILKE:  May I have a moment, Your Honor?

       4          THE COURT:  Please.

02:36:44  5      *(Pause)*

       6          MR. WILKE:  The parties would stipulate,

       7   Your Honor, as to Ms. Samuel.

       8          THE COURT:  Ms. Samuel, we're going to thank you

       9   very much.  And thank you for being so candid and honest

02:36:54 10   with us.  It's a great service.  And thank you for the

      11   questionnaire.

      12          If you'd call another juror, please, Deb.

      13          THE CLERK:  Brandy Jackson Ritchie.

      14          THE COURT:  Ladies and gentlemen, we're going to

02:37:12 15   take a break in just a moment, I promise you.  We're going

      16   to see how we do with the next two jurors, and that's a

      17   logical breaking point while we're bringing up 12 more.

      18          Ms. Ritchie, how are you today?

      19          PROSPECTIVE JUROR:  I'm okay.

02:37:31 20          THE COURT:  Have you heard all the prior questions

      21   that we asked this morning when you were down in the jury

      22   assembly room?

      23          PROSPECTIVE JUROR:  I have.

      24          THE COURT:  Are there any questions you care to

02:37:37 25   respond to or any modifications you'd like to make to your

50

02:37:40  1   questionnaire or any changes?

        2           PROSPECTIVE JUROR:  No.

        3           THE COURT:  Fundamental question is as basic as

        4   this:  Would you be fair and impartial to both sides?

02:37:47  5           PROSPECTIVE JUROR:  Yes.

        6           THE COURT:  Would you follow the law?

        7           PROSPECTIVE JUROR:  Yes.

        8           THE COURT:  I want to thank you for the

        9   completeness of the questionnaire.  It's really appreciated.

02:37:53 10           Counsel, on behalf of the defense?

       11           MR. WILKE:  I have no questions, Your Honor.

       12           THE COURT:  On behalf of the Government?

       13           MR. STAPLES:  May I have a moment to confer with

       14   Counsel, Your Honor?

02:38:06 15           THE COURT:  Certainly.

       16       *(Pause)*

       17           MR. STAPLES:  Ma'am, one of the questions you

       18   answered regarded your willingness to believe the testimony

       19   of law enforcement officers.

02:39:09 20           Do you recall answering that?

       21           PROSPECTIVE JUROR:  I do.

       22           MR. STAPLES:  And you indicate you have a healthy

       23   distrust, which is fine.  I just want to make sure that it

       24   doesn't go beyond that.  In other words, would you, as the

02:39:22 25   Judge I believe said or had said, at least, earlier, treat

*Deborah D. Parker, U.S. Court Reporter*

02:39:26  1    witnesses equally?

2         PROSPECTIVE JUROR:  I would like to think I could,

3    but --

4         MR. STAPLES:  Well, let me just follow-up:  If a

02:39:45  5    police officer or law enforcement agent takes the stand, are

6    you going to be thinking in your back of mind, this guy is

7    probably full of it?

8         PROSPECTIVE JUROR:  Probably.

9         THE COURT:  Counsel, would all of you both look at

02:39:58 10    Question 40 as well and would you look at page 5, because I

11    believe that she's saying she's going to be out of the state

12    starting November 12th.

13         MR. STAPLES:  Thank you, Your Honor.

14         I'll come back to the question I was just asking

02:40:13 15    you, but it says you're going to be assisting your mother in

16    a move out of state?

17         PROSPECTIVE JUROR:  That's correct.

18         MR. STAPLES:  When does that start?

19         PROSPECTIVE JUROR:  Her movers come tomorrow.

02:40:25 20    MR. STAPLES:  That's plenty of time, isn't it?

21         PROSPECTIVE JUROR:  Right.  Honestly, I'm keeping

22    my mom waiting on a move date.  But based on reporting last

23    Monday, I told her we could leave next Friday -- or on

24    Friday, the 12th, because that was eight days after --

02:40:41 25    THE COURT:  So you can move on the -- after the

*Deborah D. Parker, U.S. Court Reporter*

02:40:44 1  18th?

2          PROSPECTIVE JUROR:  No, I told her, based on my

3  summons that said that our first day reporting here eight

4  days after that, so that was like last Monday.

02:40:58 5          THE COURT:  The easier question is:  When were you

6  planning on being out of state?

7          PROSPECTIVE JUROR:  We're leaving on the 12th.

8          THE COURT:  On the 12th.

9          And you planned to leave the state on that date

02:41:08 10  with your mother?

11          PROSPECTIVE JUROR:  That is correct.

12          THE COURT:  Okay.  Counsel?

13          MR. WILKE:  Can I ask one follow-up question?

14          MR. STAPLES:  You, I take it, are the main support

02:41:16 15  in helping your mother move?

16          PROSPECTIVE JUROR:  I am.

17          MR. STAPLES:  How old is she?

18          PROSPECTIVE JUROR:  She's 64.

19          MR. STAPLES:  And she's relying on you to make

02:41:22 20  this move.

21          PROSPECTIVE JUROR:  She doesn't drive on the

22  freeway.

23          MR. STAPLES:  Where is she going?

24          PROSPECTIVE JUROR:  Washington.

02:41:28 25          MR. STAPLES:  Okay.  Just so I make sure I'm

*Deborah D. Parker, U.S. Court Reporter*

02:41:30  1  clear, your summons –– jury summons, I guess it said you

2  would be done by sometime around now?

3          PROSPECTIVE JUROR:  I think it said that the

4  first –– from the first day that you report, you have to be

02:41:43  5  available for eight days after that.

6          So I kind of pushed her off.  Her movers come

7  tomorrow.  She's staying with us for a couple of days and

8  then we'll head up.

9          MR. STAPLES:  So you already pushed her off once

02:41:56  10  to accommodate ––

11          *(Overtalking:  Unable to report.)*

12          PROSPECTIVE JUROR:  I kept her in limbo, yeah ––

13          THE COURT:  We couldn't get that speak-over.

14          Would you ask the question, again, Mr. Staples, so

02:42:04  15  we get a transcript of what your answer is.

16          MR. STAPLES:  My question was just confirming that

17  you've already postponed the move with your mother once,

18  based on what was on your summons –– your jury summons?

19          PROSPECTIVE JUROR:  Correct.

02:42:23  20          MR. STAPLES:  You mentioned –– we were talking

21  about your –– before I go on, Your Honor, the Government

22  would stipulate based on her prearranged travel.

23          THE COURT:  Well, just a moment.  Could you make

24  that move starting November 20th and complete that move by

02:42:42  25  December 1st?

02:42:46  1          PROSPECTIVE JUROR:  If I had to tell my mom that,

2     yes.

3          THE COURT:  Okay.  So, in other words -- I mean,

4     it would be an extraordinary effort on your part and on your

02:42:54  5     mother's part.  We understand that.  But is it possible that

6     you could stay with us the rest of this week and next week,

7     knowing that we are in recess, starting Saturday,

8     November 20th, and we're not returning for 10 days until

9     December 1st.

02:43:14 10          The original reason for that was, Thanksgiving

11     weeks we didn't think we could hold jurors together.  And,

12     also, we started looking at the airfares, not knowing who

13     all you folks were.  And if any one of the jury was

14     traveling by plane -- trust me, the airlines are charging a

02:43:30 15     lot on Monday and not as much on Tuesday.  So we, kind of,

16     months ago, when we set this out -- and we're talking, how

17     do we accommodate all of you and get the case going, but

18     still accommodate the holiday.

19          Could you make that move November 20th through

02:43:44 20     December 1st?

21          PROSPECTIVE JUROR:  I could.

22          THE COURT:  Okay.  Counsel.

23          MR. STAPLES:  Thank you, Your Honor.

24          So going back to my original line of questioning

02:43:52 25     about whether a law enforcement agent or a police officer on

02:43:56  1   the stand, I believe you said in the back of your mind you

2   would be questioning -- what would you be thinking in the

3   back of your mind?

4           PROSPECTIVE JUROR:  I mean, I can't say what I

02:44:06  5   would think when they're up there.  I will tell you, I do

6   have a healthy distrust.  I was married to a police officer.

7   I have had friends who are police officers, who are among

8   the most dishonest people I have met in my life.

9           MR. STAPLES:  And so going back to, I think, one

02:44:26 10   of the Judge's earlier questions:  Would that affect your

11   ability to treat all the witnesses fairly?

12           PROSPECTIVE JUROR:  I can't say whether or not

13   that would, like -- I can't -- I can't say.

14           MR. STAPLES:  Well, let me put it to you this way:

02:44:43 15   Can you assure us that it wouldn't?

16           PROSPECTIVE JUROR:  I cannot.

17           MR. STAPLES:  And I appreciate that.

18           You mentioned -- regarding the question regarding

19   this case being a murder case, you answered if the death

02:45:00 20   penalty is a potential issue, that you would have a problem

21   serving?

22           PROSPECTIVE JUROR:  Absolutely.

23           MR. STAPLES:  Can you tell me more about that?

24           PROSPECTIVE JUROR:  I don't believe the death

02:45:07 25   penalty is the answer ever.  I would not ever feel

02:45:14  1    comfortable taking part in any case that could result in

2    that.

3            MR. STAPLES:  Okay.  So would that be a problem

4    for you in this case, if the Judge was to tell you not to

02:45:24  5    consider punishment?

6            THE COURT:  Counsel, that raises an inference that

7    is incorrect.  How are we going to resolve that?

8            I'm going to order Counsel to meet and confer

9    immediately on this.  Let me [sic] stand up and talk to each

02:45:38 10    other.  And if you don't, then I'll resolve it.

11        *(Pause)*

12            MR. STAPLES:  There's no stipulation, Your Honor.

13            THE COURT:  Ladies and gentlemen, this case does

14    not involve allegations concerning the death penalty.  I

02:46:01 15    want to take that off the table.  But beyond that, penalty

16    or punishment is not to be considered by you.  Is that

17    clear?

18            And I think the inference is being raised not by

19    counsel, but by a lack of a stipulation and candidness on

02:46:16 20    all of our parts that this is not a death penalty case.  But

21    beyond that, penalty or punishment is not to be considered

22    by you.

23            Counsel.

24            MR. STAPLES:  Thank you, Your Honor.

02:46:27 25            Then just going back to the round of questions

57

| | | |
|---|---|---|
| 02:46:31 | 1 | regarding law enforcement witnesses, you can at least give |
| | 2 | your assurance you'll do your best effort to listen to their |
| | 3 | testimony fairly? |
| | 4 | PROSPECTIVE JUROR:  Yeah. |
| 02:46:44 | 5 | MR. STAPLES:  And would you be willing to judge it |
| | 6 | by what they actually say, rather than just their position? |
| | 7 | In other words, listen to what they say, but first before |
| | 8 | you decide whether that makes sense or not? |
| | 9 | PROSPECTIVE JUROR:  Yes. |
| 02:46:56 | 10 | MR. STAPLES:  That's fair enough.  Thank you, |
| | 11 | ma'am. |
| | 12 | No further questions, Your Honor. |
| | 13 | THE COURT:  The peremptory would now pass back to |
| | 14 | the Government.  This would be the fifth peremptory if you |
| 02:47:09 | 15 | decide to exercise it. |
| | 16 | *(Pause)* |
| | 17 | MR. STAPLES:  The Government accepts the panel as |
| | 18 | presently constituted, Your Honor. |
| | 19 | THE COURT:  The peremptory now passes to the |
| 02:47:29 | 20 | defense.  This would be the eighth peremptory, if the |
| | 21 | defense decides to exercise a peremptory challenge. |
| | 22 | *(Pause)* |
| | 23 | MR. WILKE:  I need a moment, Your Honor. |
| | 24 | THE COURT:  Absolutely.  You have that time, |
| 02:48:04 | 25 | Counsel. |

*Deborah D. Parker, U.S. Court Reporter*

02:48:05  1          MR. WILKE:  Thank you.

2          THE COURT:  No concern.

3       *(Pause)*

4          MR. WILKE:  Defense would accept the panel,

02:49:39  5    Your Honor.

6          THE COURT:  Now, before doing so, may I have leave

7    to talk to the jury about their service one more time, the

8    time and position upon them and what our expectations are.

9          Would that be acceptable?

02:49:52 10          MR. WILKE:  Yes, Your Honor.

11          MR. STAPLES:  Yes, Your Honor.

12          THE COURT:  First of all, for all of you folks

13    downstairs, we're not done selecting the jury, even if this

14    is our jury in a few moments.  We're going to have four

02:50:03 15    alternates.  And that means if one of the jurors became ill

16    or was unable to continue, that we don't hold up the

17    proceedings for weeks or months waiting for a return of that

18    juror.  You're a safety valve, in a sense, and you listen to

19    the same evidence.  You will keep the same hours.  The only

02:50:20 20    difference is when the sitting jury goes in to deliberate,

21    you would go to a separate location in the courthouse.  And

22    even during your deliberations, if one of the jurors was

23    unable to continue, one of the four of you by lot -- and we

24    don't know which one, because we would draw that jury,

02:50:37 25    literally -- would then take the place of the sitting jury

02:50:42  1    and they would start their deliberative process as a group

2    over again.

3                 So, first of all, let me say to you that I

4    wouldn't be as concerned if this was a trial without the

02:50:52  5    Thanksgiving week involved.  We would literally be starting

6    this week.  We would be in session next week.  And we would

7    conclude, I think, sometime the following week.  There's a

8    low of eight days, a high of 12 days.

9                 And so I haven't even asked you about Friday yet,

02:51:10 10    but we would contemplate getting the jury today, having a

11    full day of evidentiary hearing tomorrow, along with opening

12    statements, being in session in Wednesday and then finding

13    out if you can sit on Friday; and if you can, it would be

14    truly remarkable and wonderful if we can continue on, again,

02:51:28 15    Friday.  But we don't know if one of you has a plane fare

16    again, or you decided to Veterans Day, make that Friday a

17    four-day weekend.  So we'll question all of you as a posit

18    group.

19                 So you're in session two days and maybe three days

02:51:46 20    this week, five full days.  And then on November 20th to

21    December 1, you're gone.  We reconvene on December 1st,

22    which is a Wednesday; a Thursday, the 2nd; a Friday, the

23    3rd.  And there's some expectation that we may get this case

24    to you the week starting, Monday, the 8th; the 9th, the

02:52:08 25    10th, the 11th, but we were cautious.  We kind of planned

60

02:52:12  1  for the outside, if you would, and I hope I have those

2  dates, Counsel, if you're following by calendar.  Am I

3  giving you the correct dates?

4          Mr. Staples, am I giving you the correct dates?

02:52:25  5          I think I am.

6          Mr. Gonzalez, can you sit with us this period of

7  time?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  And I humbly thank you.  All counsel

02:52:36 10  thanks you.  They're putting their faith and trust in the 12

11  of you, right now.

12          Ms. Ritchie, extraordinary.  I don't know what to

13  say to your mom or what you're going to say, but they both

14  want you as a juror.  And that means you would have to delay

02:52:50 15  that move until the 20th.  Maybe get an early start on

16  Friday.  We don't know.  But you wouldn't reconvene, again,

17  until the 1st.  So we need you back on December 1st.

18          Can you make that extraordinary effort on our

19  part?

02:53:04 20          PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Mr. Ulep, I want to pay you the same

22  courtesy, each one of you, and talk to you individually,

23  because jury service is extraordinary.

24          Can you sit with us this period of time, sir?

02:53:19 25          PROSPECTIVE JUROR:  Sure.

02:53:33  1          THE COURT:  Mr. Vuorisalo, am I pronouncing the

2     name correctly?

3               PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Once again, it's extraordinary.

02:53:39  5     Normally, I wouldn't be concerned if it was -- they were

6     consecutive days.  But when we talked about the case months

7     ago, we were trying to plan what's going to work for our

8     jury.  So we just accepted Thanksgiving is gone that week

9     with one or more jurors.  And we were really worried about

02:53:57 10     the airfares, if anybody was flying.

11               Can you sit with us this period of time?

12               PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Humbly, thank you.  Civic minded and

14     and very patriotic, frankly.

02:54:11 15          Mr. Shiel -- Dr. Shiel.  I apologize.

16               You've heard my explanation.  The same courtesy.

17               Can you sit with us, sir, at this period of time?

18               PROSPECTIVE JUROR:  Yes.

19          THE COURT:  I want to humbly thank you.

02:54:29 20          Ms. Mowbray, can you sit with us this, this

21     period -- Mowberry [sic]?  The way you looked at me, I was

22     terrified.

23          THE CLERK:  They can't hear you downstairs.

24     Sorry.

02:54:43 25          THE COURT:  Oh!  I don't know why.

*Deborah D. Parker, U.S. Court Reporter*

| | | |
|---|---|---|
| 02:54:45 | 1 | THE CLERK:  The microphone is too far away. |
| | 2 | THE COURT:  I don't know why. |
| | 3 | Well, Ms. Mowbray, can you sit with us this period |
| | 4 | of time? |
| 02:54:53 | 5 | PROSPECTIVE JUROR:  Yes. |
| | 6 | THE COURT:  Humbly thank you. |
| | 7 | Ms. Groscost, can you sit with us this period of |
| | 8 | time? |
| | 9 | PROSPECTIVE JUROR:  Yes. |
| 02:55:04 | 10 | THE COURT:  I want to thank you. |
| | 11 | PROSPECTIVE JUROR:  You're welcome. |
| | 12 | THE COURT:  Ms. Adams, can you sit with us this |
| | 13 | period of time? |
| | 14 | PROSPECTIVE JUROR:  I do have a question. |
| 02:55:13 | 15 | THE COURT:  Please. |
| | 16 | PROSPECTIVE JUROR:  I do have a trip planned. |
| | 17 | THE COURT:  I need a microphone.  I apologize. |
| | 18 | We'll get you a microphone. |
| | 19 | (Pause) |
| 02:55:23 | 20 | PROSPECTIVE JUROR:  I do have a trip planned this |
| | 21 | weekend. |
| | 22 | THE COURT:  We're going to flip that thing on. |
| | 23 | There we go. |
| | 24 | Now, we should have that on.  Well, the battery |
| 02:55:36 | 25 | probably died. |

*Deborah D. Parker, U.S. Court Reporter*

02:55:38    1                 THE CLERK:  It did.  Let me --

            2                 THE COURT:  Can you speak loudly?

            3                 PROSPECTIVE JUROR:  Yes.  I have a trip planned

            4    this weekend.

02:55:45    5                 THE COURT:  For this weekend?

            6                 PROSPECTIVE JUROR:  Yes.

            7                 THE COURT:  You're going.

            8                 PROSPECTIVE JUROR:  Okay.  But you said Friday --

            9    for Veterans Day.

02:55:53   10                 THE COURT:  When are you starting your trip?

           11                 PROSPECTIVE JUROR:  Friday.  I return Monday

           12    morning.

           13                 THE COURT:  And do you want the whole day off?

           14                 PROSPECTIVE JUROR:  Preferably, yes.

02:56:04   15                 THE COURT:  We kind of contemplated that.  Is

           16    there any way you can change that?  Or is this a hardship?

           17    Or are you --

           18                 PROSPECTIVE JUROR:  I'm not flying, so it can be

           19    adjusted.

02:56:15   20                 I'm not flying, so it can be adjusted if needed.

           21                 THE COURT:  If we can, humbly, we would implore

           22    that, because if we can get one more day -- it's evidence

           23    in.  Trust me.  You will get that case in the time period or

           24    even before.

02:56:29   25                 PROSPECTIVE JUROR:  Okay.

02:56:30  1          THE COURT:  So let's find out.  Thank you, by the

2  way.

3          You're in the same position as Ms. Ritchie and,

4  humbly, thank you.

02:56:39  5          Let me go back to Juror No. 9, Ms. Dewitt.

6          Can you sit with us this period of time?

7          PROSPECTIVE JUROR:  Yeah.  I do have a question.

8          THE COURT:  We're going to hand the microphone

9  down to you, with my apologies.

02:56:55  10          I just want to take a moment with each of you,

11  individually, okay?

12          PROSPECTIVE JUROR:  Yeah, I do have a question.

13  Are we going to be given a paper of the dates that we have

14  to be here so I can give it to my employer?

02:57:06  15          THE COURT:  Yeah.  Absolutely.  I can state them

16  now, just roughly, but we'll write them down for you:  Today

17  obviously, tomorrow and Wednesday.  We're hoping for Friday.

18          Next Monday, Tuesday, Wednesday, Thursday, Friday.

19  But we recognize some of you may want to get an early start,

02:57:29  20  so we'll talk about 2:00 o'clock, or 3:00 o'clock, or maybe

21  go from 8:00 to 2:00 and go through the lunch hour.  Then,

22  take lunches later and let you go early on Friday.

23          You're back December 1st, which is a Wednesday,

24  the 2nd and the 3rd.  Some possibility of the case

02:57:46  25  concluding; but if not, then we're over until the next week,

02:57:52  1   minimally, on the 8th, 9th, 10th, 11th.  We believe that the

2   case is going to be submitted to you that week, but we were

3   cautious and kicked it over just to make certain.  But we

4   think the case is coming to you that week, okay.

02:58:09  5            And we'll get that down for all of your employers.

6            PROSPECTIVE JUROR:  Okay.  Thank you.

7            THE COURT:  Okay.  Mr. Real.  Can you sit with us

8   for this period of time?

9            PROSPECTIVE JUROR:  Yeah.

02:58:27 10            THE COURT:  Humbly, thank you.

11            Would you hand the microphone back to Mr. Trapp.

12   Way back in the corner.

13            PROSPECTIVE JUROR:  Mr. Trupp.

14            THE COURT:  Mr. Trupp, my apologies.  My own

02:58:43 15   handwriting made the "u" look like an "a."

16            PROSPECTIVE JUROR:  Yes.

17            THE COURT:  Once again, I just want to ask you,

18   each of you, individually, can you sit this period of time,

19   sir?

02:58:53 20            PROSPECTIVE JUROR:  I can, yes.

21            THE COURT:  Thank you.  On behalf of all the

22   parties in the court.

23            And is it --

24            THE WITNESS:  Marinescu.

02:59:06 25            THE COURT:  Marinescu.  Thank you.  I want to take

02:59:10  1   my time with each of you.

2              Can you sit with us this period of time?

3              PROSPECTIVE JUROR:  I would like to voice a few

4   concerns, Your Honor.

02:59:14  5   THE COURT:  I'm sorry?

6              PROSPECTIVE JUROR:  I'd like to voice a few

7   concerns, a couple of concerns.

8              THE COURT:  Okay.

9              PROSPECTIVE JUROR:  Well, first for the time

02:59:23  10  serving, I'm roughly three months into a new job, so this

11  will play an impact with all the days I'm missing.

12             THE COURT:  Well, just a moment.  It's not a

13  matter of convenience.  It's a matter of financial hardship.

14             PROSPECTIVE JUROR:  It's little bit of --

02:59:37  15  THE COURT:  If your employer is not paying, then I

16  want to speak to that employer.  Let's get him on the phone,

17  but -- and I know how hard that is.  But trust me, I don't

18  know who your employer is, but they're in my federal court

19  all the time.  They're searching for jurors all the time.

02:59:51  20  PROSPECTIVE JUROR:  Well, it is unpaid.  I learned

21  that after filling out the questionnaire.

22             THE COURT:  So you are not going to be paid?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  All right, Counsel, knowing that, I

03:00:02  25  would suggest that you reopen the questions with this juror,

*Deborah D. Parker, U.S. Court Reporter*

67

03:00:05  1    because it's exactly why I'm asking.

2              MR. WILKE:  That's fine, Your Honor.

3              PROSPECTIVE JUROR:  I do have one more.  One of

4    the witnesses, Cindy Le, I may or may not know her.  It's a

03:00:16  5    fairly common name, but I wanted to address that.

6              THE COURT:  And what's your association with that?

7              PROSPECTIVE JUROR:  If it is this person, I worked

8    with her at a prior job, which was before this job.

9              THE COURT:  Could I ask what kind of job and who

03:00:29 10    was the employer?

11             PROSPECTIVE JUROR:  It was B. Braun Medical.

12             THE COURT:  Counsel, I don't know your witnesses

13    as well as either of you.

14             Is that familiar to either of you?

03:00:46 15             MR. WILKE:  I don't think that's the same Cindy

16    Le.

17             PROSPECTIVE JUROR:  I thought so.

18             THE COURT:  It's a matter of whether or not you

19    have a financial hardship or not.

03:00:56 20             Counsel.

21             MR. WILKE:  Just briefly.  Mr. Marinescu, is that

22    the proper --

23             PROSPECTIVE JUROR:  Close enough.

24             MR. WILKE:  If you -- so we're looking at 12 to

03:01:07 25    maybe 15, 16 days coming to court over the next six weeks.

*Deborah D. Parker, U.S. Court Reporter*

03:01:12  1    If you did not get paid -- and I understand you don't get

2    paid by your employer -- and you were limited to the $50 a

3    day the court pays you to come here, can you explain to the

4    Court how that would affect you financially?

03:01:25  5              PROSPECTIVE JUROR:  It will play a large impact.

6    I actually just started daycare for my son today.  So

7    compared to what is being compensated by the Court and what

8    I'm making, it's a significant difference.  It would make

9    a -- it would play a big role in it.

03:01:42  10             MR. WILKE:  I'm guessing the $50 a day doesn't

11   even cover daycare?

12             PROSPECTIVE JUROR:  No.

13             MR. WILKE:  Mr. Wilke, we need you to speak into

14   the microphone.

03:01:50  15             THE COURT:  Does the $50 a day even cover your

16   childcare?

17             PROSPECTIVE JUROR:  No.

18             MR. WILKE:  And are you a homeowner or a renter?

19             PROSPECTIVE JUROR:  I'm a renter, right now.

03:01:58  20             MR. WILKE:  How would it affect your ability to

21   pay your rent?

22             PROSPECTIVE JUROR:  It's -- I would really need to

23   do the number crunching on that, but I believe it would play

24   a role.

03:02:09  25             THE COURT:  Counsel, I would like to know if he

*Deborah D. Parker, U.S. Court Reporter*

69

|         |    |                                                                    |
|---------|----|--------------------------------------------------------------------|
| 03:02:11 | 1 | has a spouse and if she's employed. |
|         | 2 | MR. WILKE:  Are you married and does your wife |
|         | 3 | work? |
|         | 4 | PROSPECTIVE JUROR:  Yes, I'm married.  Today is |
| 03:02:16 | 5 | her first day back. |
|         | 6 | MR. WILKE:  So your wife is returning today from |
|         | 7 | maternity leave? |
|         | 8 | PROSPECTIVE JUROR:  Yes.  And for the last month, |
|         | 9 | she was unpaid. |
| 03:02:35 | 10 | MR. WILKE:  May I speak to Counsel, Your Honor? |
|         | 11 | MR. STAPLES:  We would stipulate, Your Honor. |
|         | 12 | MR. WILKE:  We would stipulate. |
|         | 13 | THE COURT:  All right.  We're going to thank and |
|         | 14 | excuse you, sir, by stipulation of counsel. |
| 03:02:44 | 15 | Would you call an additional juror, Counsel [sic]. |
|         | 16 | And, Counsel, if that is so, I believe we would go |
|         | 17 | back to the appropriate order, and I want you to correct me |
|         | 18 | if that's not correct. |
|         | 19 | THE CLERK:  Yes.  This is our last juror? |
| 03:02:56 | 20 | THE COURT:  Yes, I understand. |
|         | 21 | THE CLERK:  Kelly Krempa. |
|         | 22 | *(Pause)* |
|         | 23 | THE COURT:  If you two would discuss very -- if |
|         | 24 | you'd meet and confer for just a moment. |
| 03:03:18 | 25 | -- how you would like the Court to resume the |

*Deborah D. Parker, U.S. Court Reporter*

03:03:23   1    peremptory challenges?  In other words, there had been a

2    pass by the Government on the fifth challenge.  There had

3    been a pass by the defense on the eighth challenge.

4              Would you two meet and confer while I start my

03:03:35   5    conversation with Ms. Krempa.

6              Have you heard all the prior questions?

7              PROSPECTIVE JUROR:  I have.

8              THE COURT:  And we're going to have a jury today,

9    I probably said.  But is there anything on the questionnaire

03:03:46  10    that you care to change or modify?

11             PROSPECTIVE JUROR:  Well, listening to testimony

12    today, I kind of believe that police officers are always

13    right; but I had a lot of things go through my head that

14    have happened in my life, so I don't believe that anymore.

03:04:06  15             THE COURT:  Okay.  You treat people co-equally, at

16    least, when they take the stand.  Then we judge whether

17    their perception is credible or not, whether they're telling

18    us the truth or not or a portion of the truth or all of the

19    truth or none of the truth.  And that's the important

03:04:22  20    concept here.  I want people who are -- who fairly look at a

21    witness, not by title, because otherwise we give them a

22    title and they would be anointed on the witness stand.

23             That's not the idea.  And as long as I live, the

24    humblest of professions, could be as truthful, if not more

03:04:42  25    truthful, is an individual decision we make as a human

03:04:44   1    being.

2              PROSPECTIVE JUROR:  Right.

3              THE COURT:  Okay.  With all that in mind, would

4    you be fair and impartial to both sides?

03:04:54   5              PROSPECTIVE JUROR:  I would.

6              THE COURT:  Would you follow the law?

7              PROSPECTIVE JUROR:  I would.

8              THE COURT:  Remember, the law -- I will get it

9    right, I promise you.  The Supreme Court will give me

03:05:02  10   guidance; the Ninth Circuit will.  But it's my duty to

11   instruct you correctly on the law, and it's my duty to make

12   that understandable.  And I know a lot of the jurors were

13   concerned about legalese.  There will be a little bit of

14   legalese, but it's my duty to explain that to you.

03:05:14  15             PROSPECTIVE JUROR:  Okay.

16             THE COURT:  Okay.  Counsel, on behalf of the

17   defense?

18             MR. WILKE:  Thank you.

19             Ms. Krempa, your husband is an agent with the

03:05:22  20   Department of Homeland Security?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  And how long -- he's been doing that

23   for 20 years?

24             PROSPECTIVE JUROR:  1991.

03:05:30  25             MR. WILKE:  Well, 30 years?

03:05:33 1            PROSPECTIVE JUROR:  Sorry.  2001.

2            THE COURT:  20 years.  Does he talk about his job?

3            PROSPECTIVE JUROR:  Yes.

4            THE COURT:  Does he work here in Orange County?

03:05:45 5            PROSPECTIVE JUROR:  No.  He went from the Border

6    to San Diego, to Oceanside, to Long Beach.  And now he's in

7    Paramount.

8            THE COURT:  In Paramount in --

9            PROSPECTIVE JUROR:  Is that Orange County?  Is

03:05:57 10   Paramount Orange County?

11           MR. WILKE:  Los Angeles County.

12           PROSPECTIVE JUROR:  Yes.

13           THE COURT:  But it's the Central District of

14   California, correct?

03:06:03 15          PROSPECTIVE JUROR:  Correct.

16           THE COURT:  And so he investigates cases that are

17   prosecuted in the federal courthouse in the Central District

18   of California, correct?

19           PROSPECTIVE JUROR:  He will.  I don't think he has

03:06:14 20   since he moved to Paramount.  I know he did down in

21   San Diego.

22           MR. WILKE:  Okay.  Now, you were pretty adamant in

23   your response to the question about tending to believe the

24   testimony of law enforcement.

03:06:32 25          Do you recall your actual answer?  It's pretty

03:06:37  1    colorful.  Fair to say?

2             PROSPECTIVE JUROR:  I believe I -- I know what I

3    put.

4             MR. WILKE:  Do you remember what you said, right?

03:06:43  5    PROSPECTIVE JUROR:  I think anybody that ends up

6    in --

7             MR. WILKE:  Right.  You don't have to repeat it,

8    but --

9             PROSPECTIVE JUROR:  Yes.

03:06:48  10   MR. WILKE:  -- do you remember what you said?

11            PROSPECTIVE JUROR:  Yes.

12            THE COURT:  Stop.  Stop.  If we could have

13   captured that, we would have; but between the two of you --

14   Mr. Wilke, and you need to control this.  We don't have a

03:07:03  15  record.

16            And I'm matching realtime.  And, Deborah, thank

17   you for that effort on behalf of the court reporter services

18   to capture that.

19            I'm going to strike the question, and I'm going to

03:07:17  20  strike the answer.

21            Mr. Wilke, you have to control this.

22            MR. WILKE:  Thank you, Your Honor.

23            Ms. Krempa, I want to go back to your --

24            THE COURT:  Lean closer to the microphone or pull

03:07:29  25  it closer to you.

03:07:31  1                MR. WILKE:  I want to go back to your answer to

2     Question 9, which was the question about whether you would

3     be more likely to believe the testimony of a law enforcement

4     officer over the testimony of another one.

03:07:39  5                Without repeating your answer, do you recall what

6     your answer was?

7                PROSPECTIVE JUROR:  Yes.

8                MR. WILKE:  Okay.  Now, you filled out this

9     questionnaire after hearing Judge Carter's instructions last

03:07:50 10   week, correct?

11                PROSPECTIVE JUROR:  Correct.

12                MR. WILKE:  You recall him telling you that the

13   defendant is presumed innocent, correct?

14                PROSPECTIVE JUROR:  Correct.

03:08:00 15                MR. WILKE:  And that the Government has the burden

16   of proof beyond a reasonable doubt.

17                PROSPECTIVE JUROR:  Yes.

18                THE COURT:  Okay.  And even though you heard

19   those -- and you knew about that before he told you that,

03:08:10 20   right?

21                PROSPECTIVE JUROR:  Yes.

22                MR. WILKE:  I mean, your husband's been a

23   law enforcement officer for 20 years?

24                PROSPECTIVE JUROR:  Yes.

03:08:18 25                MR. WILKE:  Okay.  And then though you were aware

03:08:20  1  of the law and Judge Carter reminded you of the law, fair to

2  say your answer is contrary to the law?

3              PROSPECTIVE JUROR:  Yes.

4              MR. WILKE:  Okay.  So you understand I'm the

03:08:34  5  defense lawyer in this case?

6              PROSPECTIVE JUROR:  Yes.

7              MR. WILKE:  Okay.  Should I be concerned, ma'am?

8              PROSPECTIVE JUROR:  No.

9              MR. WILKE:  And why is that, given your answer?

03:08:51 10              PROSPECTIVE JUROR:  Not getting too personal, I've

11  had a lot of interventions with police officers due to

12  issues in my family, plus I have a husband that's an

13  officer.  So all the memories came up of the good and bad

14  and the ugly today.  So I can clearly see that in some

03:09:21 15  instances that I was involved with police officers, I don't

16  want to say they weren't telling the truth, but maybe they

17  opted out and didn't give forthcoming information, per se.

18              MR. WILKE:  Okay.  Thank you for that answer.

19              PROSPECTIVE JUROR:  Sure.

03:09:38 20              MR. WILKE:  You also had some personal experience

21  where close -- people you were close with were victims of

22  murder, correct?

23              PROSPECTIVE JUROR:  Correct.

24              MR. WILKE:  And I'm very sorry.  And it's

03:09:50 25  happened, I guess, twice in your life?

03:09:52  1          PROSPECTIVE JUROR:  As I was sitting here, there's

2     a third one as well that I totally blocked out.

3          MR. WILKE:  You gave us the dates and the nature

4     of the relationship on the first two.  The third incident,

03:10:03  5     when was that?  Just an approximate year.

6          PROSPECTIVE JUROR:  1998.

7          MR. WILKE:  And what was your relationship with

8     the victim there?

9          PROSPECTIVE JUROR:  Fiancée to my cousin.  And it

03:10:17 10     was in Chicago, Illinois, at a wedding.

11          MR. WILKE:  It was a -- could you repeat the

12     relationship?  I'm not sure I heard it.

13          THE COURT:  The microphone.  The microphone.

14          PROSPECTIVE JUROR:  Fiancée of my cousin.

03:10:28 15          MR. WILKE:  Cousin's fiancée?

16          PROSPECTIVE JUROR:  Yes.

17          MR. WILKE:  Were you close to that person?

18          PROSPECTIVE JUROR:  Yes.

19          MR. WILKE:  Having a close relationship to three

03:10:40 20     victims of murder, do you believe that that would make you

21     more likely to believe the Government than the defendant in

22     this case?

23          THE COURT:  Well, just a moment.  As to a police

24     officer testifying?

03:10:56 25          MR. WILKE:  Just to her view of the case,

*Deborah D. Parker, U.S. Court Reporter*

03:10:58  1    Your Honor.

2         Are you going -- do you believe you would have

3    some difficulty in presuming the defendant to be innocent

4    and holding the Government to its burden of proof beyond a

03:11:11  5    reasonable doubt?

6         PROSPECTIVE JUROR:  I don't think so.  I mean, the

7    Government in these cases didn't work in my favor, so I

8    can -- I can clearly see both sides of the problem.

9         MR. WILKE:  Now, you'd also indicated that you

03:11:42 10    probably had some feelings or belief about the American

11    criminal justice system that would make it difficult for you

12    to be fair and impartial to both sides?

13         PROSPECTIVE JUROR:  Correct.

14         MR. WILKE:  When you answered that question, is

03:11:55 15    it -- were those -- the probability that you would -- it

16    would be difficult for you to be fair and impartial?  When

17    you answered that question last week, was that -- were you

18    saying that you would -- more likely to be partial in favor

19    of the prosecution?

03:12:17 20         Is that what you meant to say last week?

21         PROSPECTIVE JUROR:  Yes.  Yes.

22         MR. WILKE:  That's fine.  And do you want to sit

23    on this jury, ma'am?

24         PROSPECTIVE JUROR:  I think it would be quite

03:12:37 25    interesting, yes.

*Deborah D. Parker, U.S. Court Reporter*

03:12:38  1          MR. WILKE:  Okay.  So you do?  And is your desire

2    to sit on the jury, do you think that's colored your now

3    change in position from last week?

4          Are you saying that you can be fair and impartial?

03:12:49  5    Do you think your desire to be a juror in this case that is

6    very interesting, I agree, is coloring your answers here?

7          PROSPECTIVE JUROR:  No.

8          MR. WILKE:  I have no further questions.

9          THE COURT:  Counsel?

03:13:09 10          MR. STAPLES:  Ma'am, I'm sorry we have to crane

11    around like this.  I just want to make sure I understand

12    clearly.  There's been a lot of back and forth between you

13    and both the Court and the defense counsel.

14          As you sit here, right now, can you assure the

03:13:29 15    Judge and the parties that you will listen to the evidence

16    in this case fairly to both sides?

17          PROSPECTIVE JUROR:  Honestly, my only concern

18    would be -- would be the drug abuse or the drugs or the

19    illegal drugs.

03:13:46 20          MR. STAPLES:  Okay.

21          PROSPECTIVE JUROR:  If that is part of the issue

22    here.

23          MR. STAPLES:  Well, if you -- for instance, if you

24    were to hear evidence or testimony that the defendant or

03:13:56 25    some of the witnesses in this case were drug users, how

03:14:00  1    would that affect you?

2         Well, that's not a good question.  How would that

3    affect your ability to listen dispassionately to what they

4    have to say and make up your mind whether they're being

03:14:16  5    truthful or not?

6         PROSPECTIVE JUROR:  That's a hard question for me

7    to answer.  I don't know if I could be partial [sic],

8    depending on the testimony of what I'm hearing.

9         MR. STAPLES:  Do you think that you can separate

03:14:32 10    in your mind the fact that you may not like the person

11    testifying or what they're doing with trying to determine

12    whether you think they're telling the truth?  And I'm not

13    asking you to answer something in the future that you don't

14    even know right now.  I'm just asking --

03:14:53 15         PROSPECTIVE JUROR:  In my mind, if whatever

16    transpired in the situation, if they were high on drugs, I

17    might have an issue.

18         MR. STAPLES:  What would that issue be?

19         PROSPECTIVE JUROR:  Thinking that he's high and

03:15:12 20    he's done this because he's high.  I have -- to be quite

21    honest, I have no patience for drugs.  I've had very big

22    problems in my life with drugs.  Not me personally but loved

23    ones.

24         THE COURT:  Without having to disclose that,

03:15:28 25    Counsel, you might look at Question No. 24.

*Deborah D. Parker, U.S. Court Reporter*

03:15:32  1        PROSPECTIVE JUROR:  That would be my -- I don't

2    know the history behind the case, and I don't know if that

3    was --

4        MR. STAPLES:  I appreciate that.  And I certainly

03:15:44  5    don't mean to pry.

6        THE COURT:  I refer both counsel to

7    Question No. 24, because --

8        MR. STAPLES:  Again, our only -- our only interest

9    is in determining if the jurors we pick are going to be able

03:15:59 10    to listen to and evaluate the evidence fairly.  And I just

11    need to know if you can do that.

12        PROSPECTIVE JUROR:  If illegal drugs are involved

13    in this case, then probably not.

14        MR. STAPLES:  Okay.  That's fair enough, and I

03:16:20 15    appreciate your candor.

16        One moment, please, Your Honor.

17        *(Pause)*

18        MR. STAPLES:  Nothing further, Your Honor.

19        Thank you.

03:16:29 20        THE COURT:  Okay.  Is there an agreement with

21    counsel where the Court would turn to the next peremptory

22    challenge?

23        MR. WILKE:  No.

24        THE COURT:  I'm sorry?

03:16:42 25        MR. WILKE:  No, it's not.

```
03:16:43   1            And could I speak to the counsel regarding this
           2    last issue as well?
           3            THE COURT:  Yes, briefly.
           4        (Pause)
03:16:50   5            MR. WILKE:  The parties would stipulate as to
           6    Ms. Krempa, Your Honor.
           7            THE COURT:  Ms. Krempa, thank you.
           8            Your questionnaire was extraordinarily helpful to
           9    everyone.  You're excused by agreement of both counsel.
03:17:03  10    It's appreciated.
          11            All right then.  Ladies and gentlemen, we're going
          12    to give you a 15-minute recess, okay.  Ask you to use the
          13    restrooms down the hallway.  But I'm confident we'll have a
          14    jury today, as I've said.
03:17:16  15            Debbie, we'll need 12 more jurors -- actually, 13
          16    more jurors brought up.  Start them up.
          17            So, please, don't discuss this matter, nor form or
          18    express any opinion concerning the case.  If you'll exit for
          19    a moment.
03:17:31  20            Counsel, you will remain.
          21        (The prospective jurors exited the courtroom.)
          22            THE CLERK:  13, you say?
          23            THE COURT:  13.
          24        (Recess taken from 3:17 p.m. to 3:30 p.m.)
03:30:14  25        (The following proceedings were had outside the
```

*Deborah D. Parker, U.S. Court Reporter*

*presence of the prospective jury:)*

THE COURT:  We're on the record.  The jury is not present -- the prospective jurors are not present.  The defendant and counsel are.

Apparently, you're not able to reach an agreement concerning where we should resume with peremptories.

My thought is as follows:  In every case, the three -- Mexican Mafia, the Armenian Mafia, back to the Aryan Brotherhood -- in every case, I have always had the same procedure of ultimately asking the 12 jurors after you both passed that one question:  Can you sit?  And invariably, there can be a problem or nonproblem. Hopefully, we caught the one problem today, because that would have dissipated the alternate and reduced our numbers significantly.

And with the Thanksgiving and holidays, I'm concerned, so I've cut the alternates to a bare minimum of -- normally, I'd have six.

The Government passed.  The defense passed.  I think it's appropriate and fair that each of you go back to the Government exercising the fifth peremptory and the defense exercising the eighth peremptory.  The defense then exercising the ninth peremptory.  The Government using the sixth peremptory and the defense using the 10th.

I'd rather err cautiously and give you each that

*Deborah D. Parker, U.S. Court Reporter*

03:31:55  1  extra peremptory than have an appealable issue, potentially,

2  when I can avoid that by making the decision that each of

3  you have passed with five and eight and then the defendant

4  would have two and one.

03:32:10  5          Actually, it's beneficial for the Government.  And

6  I would have been concerned about that.  Because if you take

7  a percentage, then the Government would have two

8  peremptories.  The defense would have three.  If I rule the

9  other way, the Government would have one peremptory.  The

03:32:28  10  defense would have two.  I think in good faith, you both

11  passed.  We have a person who is unable to sit.  I think I'd

12  rather err in the sense of caution, and I'm going to allow

13  the Government to exercise, starting with a fifth

14  peremptory; the defense with their eighth and ninth

03:32:46  15  peremptory; the Government with a sixth peremptory and the

16  defendant with the tenth peremptory.

17          Now, Debbie, if you'd be kind enough to open up

18  the doors and let our jury in.

19          THE CLERK:  I have to line them up and then bring

03:33:00  20  them in.

21          THE COURT:  Okay.

22          THE CLERK:  I'm going to bring the first person in

23  12.

24          THE COURT:  And we're going to put the next person

03:33:09  25  in seat No. 12.

03:33:11  1              THE CLERK:  That's what I thought.

2              THE COURT:  You got it.  And then the rest of

3      them, I think just have them sit on the red dot by this

4      time.

03:33:18  5              MR. WILKE:  Can we get the name of the next person

6      so we have it?

7              THE COURT:  We do.

8              MR. WILKE:  Okay.

9          *(The following proceedings were had in open court*

03:33:25 10          *in the presence of the prospective jury:)*

11              THE COURT:  Thank you, folks.

12              If you will take the seat that you previously

13      occupied.  Just take a seat that you previously occupied.

14          *(Pause)*

03:36:01 15              THE COURT:  Thank you, Debbie.

16              And, Debbie, I'll need you to formally call the

17      next juror.

18              THE CLERK:  Okay.  I'll need to turn the video on

19      downstairs.

03:36:16 20              THE COURT:  Yes.  Thank you so much.

21          *(Pause)*

22              THE CLERK:  Layla Gonzalez.

23              THE WITNESS:  Hi!

24              THE COURT:  And how are you?

03:36:29 25              And you should have already been seated.  It's

03:36:32  1    nice to see you.

2            Simple questions for you:  Have you heard all of

3    the questions asked this morning and this afternoon, because

4    you were part of the jury pool downstairs?

03:36:43  5            PROSPECTIVE JUROR:  Correct.

6            THE COURT:  Are there any questions that you

7    answered on your questionnaire that you would like to modify

8    or change?

9            PROSPECTIVE JUROR:  Not to my knowledge.

03:36:53  10            THE COURT:  Would you be fair and impartial to

11    both sides?

12            PROSPECTIVE JUROR:  Yes, I will.

13            THE COURT:  Such a simple question, but so

14    meaningful.

03:37:01  15            And will you follow the law?

16            THE WITNESS:  I will.

17            THE COURT:  Okay.  Now, I got -- I turned to

18    Question 40 and it said that you didn't know how much your

19    jobs [sic] would cover.  And we're trying to avoid

03:37:15  20    extraordinary financial hardship.  We know that there can be

21    some hardship.

22            But can you sit with us this period of time?

23            PROSPECTIVE JUROR:  Yeah, I can.  I got the

24    question clarified through HR earlier this morning.

03:37:28  25            THE COURT:  I can't thank you enough for

```
03:37:32   1   prechecking.

           2            Counsel?

           3            MR. WILKE:  Good afternoon, Ms. Gonzalez.

           4            PROSPECTIVE JUROR:  Hello!

03:37:36   5            THE COURT:  Move the microphone closer to you.

           6            MR. WILKE:  Thank you.

           7            You're going on vacation on Thursday?

           8            PROSPECTIVE JUROR:  I am taking a breather from my

           9   life.

03:37:45  10            MR. WILKE:  Are you going to be out of town?

          11            PROSPECTIVE JUROR:  I will not.

          12            MR. WILKE:  So if we were in court on Friday -- I

          13   don't think that's been decided -- you could be here on

          14   Friday?

03:37:54  15            PROSPECTIVE JUROR:  If I have to, I will.

          16            THE COURT:  Counsel, we're going to make every

          17   effort to get this matter to the jury in a timely fashion.

          18            MR. WILKE:  Understood.

          19            THE COURT:  Okay.

03:38:01  20            MR. WILKE:  SLPA, what is that?

          21            PROSPECTIVE JUROR:  Speech and --

          22            THE COURT:  A little bit slower.

          23            PROSPECTIVE JUROR:  Speech and language

          24   pathologist assistant.

03:38:11  25            THE COURT:  Thank you.
```

03:38:13  1          Now, Mr. Wilke, a little slower.

2          MR. WILKE:  You also listed on your questionnaire

3  three family members or close friends who are

4  law enforcement officers?

03:38:22  5          PROSPECTIVE JUROR:  Correct.

6          THE COURT:  Are they family or are they friends?

7          PROSPECTIVE JUROR:  They are -- they are friends.

8          MR. WILKE:  And how often do you see each of them?

9          PROSPECTIVE JUROR:  Greg just moved out of town.

03:38:36 10  Charlie, once in a while and then -- I don't remember the

11  third person that I put down.

12          MR. WILKE:  Chris Torres?

13          PROSPECTIVE JUROR:  Oh, yeah.  Also, every once in

14  a while.

03:38:44 15          MR. WILKE:  So "every once in a while" is monthly?

16  Yearly?

17          PROSPECTIVE JUROR:  Just yearly.

18          MR. WILKE:  So not that often?

19          PROSPECTIVE JUROR:  Not that often, no.

03:38:51 20          MR. WILKE:  Okay.

21          PROSPECTIVE JUROR:  I had a slight concern.  I

22  forgot that I have a relative who works in HR for Santa Ana.

23  Is that a concern?

24          MR. WILKE:  Santa Ana PD?

03:39:01 25          PROSPECTIVE JUROR:  Santa Ana PD, yeah.

03:39:03  1              MR. WILKE:  Only if you know people involved in

       2  this case.

       3              PROSPECTIVE JUROR:  Okay.

       4              THE COURT:  Or have otherwise talked to either

03:39:10  5  your friends or family member about their jobs in a way that

       6  would affect your view of this case?

       7              PROSPECTIVE JUROR:  Got it.  Negative.  None of

       8  that was disclosed.

       9              MR. WILKE:  Okay.  Finally, you had indicated that

03:39:25 10  there was -- family had been a victim of crimes due to a

      11  shooting in a foreign country; is that correct?

      12              PROSPECTIVE JUROR:  Correct.  I just have lots of

      13  uncles who have passed away due to guns control -- gun

      14  fighting.

03:39:39 15              MR. WILKE:  Here it the United States or

      16  elsewhere?

      17              PROSPECTIVE JUROR:  Huh-uh.  Out of the country.

      18              MR. WILKE:  Would that personal experience -- in

      19  this case, there will be evidence that there was a gun

03:39:50 20  involved.  Would that experience color your judgment in this

      21  case?

      22              PROSPECTIVE JUROR:  I'll try my best to not let it

      23  cloud my judgment.

      24              MR. WILKE:  Do you believe that given that

03:40:03 25  experience, you could be fair to the defendant and to the

89

03:40:05  1    Government?

      2                PROSPECTIVE JUROR:  Correct.

      3                MR. WILKE:  I have no further questions,

      4    Your Honor.

03:40:08  5                THE COURT:  Counsel, on behalf of the Government?

      6                MR. STAPLES:  Good afternoon.

      7                PROSPECTIVE JUROR:  Howdy!

      8                MR. STAPLES:  I just wanted to ask you about your

      9    answer in response to whether you'd be more likely to

03:40:20  10    believe the testimony of a law enforcement officer over that

      11    of another witness.  And you indicated that they could --

      12    the law enforcement officer could be biased and skewed --

      13    presented in -- or present information.

      14                Could you tell more about that, like what makes

03:40:39  15    you think that?

      16                PROSPECTIVE JUROR:  Not through personal

      17    experience, but just from public things I've seen and just,

      18    I'm sure, other previous experience -- you know, Black Lives

      19    Matter and things like that -- where certain information

03:40:52  20    could be presented, in order to work in favor towards the

      21    other person.  So if the evidence is presented in a sense

      22    that will favor a certain person, I definitely would be kind

      23    of judgmental in regards to that, because it's favoring

      24    somebody who could be guilty, as opposed to somebody who

03:41:08  25    could not be guilty.  So just presenting evidence that's

03:41:11 1    false.

2              MR. STAPLES:  So just so I make sure I understand

3    your answer, your concern would be that if a law enforcement

4    person or a police officer could present false information

03:41:22 5    to favor one party?

6              PROSPECTIVE JUROR:  Correct.

7              MR. STAPLES:  Okay.  And do you think that would

8    color how you listen to evidence in this case?

9              PROSPECTIVE JUROR:  As long as it's presented

03:41:35 10   fairly, then I don't feel that my judgment would implicate

11   any decision.

12             MR. STAPLES:  And how would you judge if it was

13   being presented fairly?  What would you use to --

14             PROSPECTIVE JUROR:  Body language based on the

03:41:47 15   lawyers presenting the questions.

16             MR. STAPLES:  The lawyers or the witness?

17             PROSPECTIVE JUROR:  Witnesses, lawyers.  As he's

18   being questioned, how he's responding to those questions.

19   That gives off a lot of cues as to whether he's being

03:41:58 20   sincere or whether he's being dishonest.

21             MR. STAPLES:  Okay.  And you mentioned a number of

22   social justice movements.  Would you be willing to just for

23   the duration of this trial concern yourself only with the

24   evidence you hear from the witness stand and the law that

03:42:19 25   the Judge gives you?

*Deborah D. Parker, U.S. Court Reporter*

03:42:21  1          PROSPECTIVE JUROR:  Yeah.

2          MR. STAPLES:  Okay.  Everyone has their own views

3     outside of this courtroom.  But for the weeks we will be

4     together, this is our world, right?  And are you confident

03:42:33  5     that you can set aside whatever beliefs you have and judge

6     what by you hear and what the judge tells you the law is?

7          PROSPECTIVE JUROR:  Definitely, I will try my best

8     to do that.

9          MR. STAPLES:  Thank you.  I appreciate your

03:42:47  10    answer.

11          THE COURT:  The peremptory passes back to the

12    Government.  This would be the fifth peremptory, if you

13    decide to exercise this peremptory.

14        *(Pause)*

03:43:12  15          MR. STAPLES:  Yes, Your Honor.

16          The Government would thank and excuse

17    Layla Gonzales.

18          THE COURT:  Ms. Gonzalez, thank you for the

19    answers on this questionnaire.  Extraordinarily helpful.

03:43:23  20          PROSPECTIVE JUROR:  You're welcome.

21          THE COURT:  Would you call another prospective

22    juror, please.

23          THE CLERK:  Braydon Wilson.  If you can have a

24    seat in seat No. 12, please.

03:43:41  25          THE COURT:  Thanks so much, Deb.  Appreciate it.

*Deborah D. Parker, U.S. Court Reporter*

```
03:43:49    1              Mr. Wilson, back to you with the very same

            2    questions we've been asking repeatedly:  Have you heard all

            3    the questions that we've been asking while you were down in

            4    the jury assembly room?

03:44:00    5              PROSPECTIVE JUROR:  Yes, I have.

            6              THE COURT:  Are there any questions which is

            7    extraordinary helpful to us that you would like to modify or

            8    change?

            9              PROSPECTIVE JUROR:  I don't believe so.

03:44:08   10              THE COURT:  Simple but basic question:  Would you

           11    be fair and impartial to both sides?

           12              PROSPECTIVE JUROR:  Yes, to best of my ability.

           13              THE COURT:  Would you follow the law?

           14              PROSPECTIVE JUROR:  Yes.

03:44:17   15              THE COURT:  Counsel, on behalf of the defense.

           16              MR. WILKE:  Thank you, Your Honor.

           17         (Pause)

           18              MR. WILKE:  Mr. Wilson, your brother is a police

           19    officer?

03:44:41   20              PROSPECTIVE JUROR:  That's correct.

           21              MR. WILKE:  And is he your older brother or

           22    younger brother?

           23              PROSPECTIVE JUROR:  Older brother.

           24              MR. WILKE:  How much older?

03:44:47   25              PROSPECTIVE JUROR:  Seven years.
```

| | | |
|---|---|---|
| 03:44:47 | 1 | MR. WILKE:  Are you close -- |
| | 2 | THE COURT:  Slow.  Control the pace. |
| | 3 | MR. WILKE:  Are you close to him? |
| | 4 | PROSPECTIVE JUROR:  Yeah, very. |
| 03:44:53 | 5 | MR. WILKE:  How often do you talk to him? |
| | 6 | PROSPECTIVE JUROR:  Probably every week. |
| | 7 | MR. WILKE:  Does he talk to you -- can you tell |
| | 8 | what department he works for? |
| | 9 | PROSPECTIVE JUROR:  Ontario PD.  Patrol officer. |
| 03:45:03 | 10 | MR. WILKE:  Does he talk to you about his job? |
| | 11 | PROSPECTIVE JUROR:  Sometimes, but he does keep a |
| | 12 | lot of stuff private, as it's a pretty sensitive job. |
| | 13 | MR. WILKE:  Okay.  He's a patrol officer, though, |
| | 14 | correct? |
| 03:45:14 | 15 | PROSPECTIVE JUROR:  Yeah. |
| | 16 | MR. WILKE:  Based on your communications with your |
| | 17 | brother and your relationship with your brother, do you |
| | 18 | have -- do you think that shapes your views of the criminal |
| | 19 | justice system? |
| 03:45:31 | 20 | PROSPECTIVE JUROR:  I would say that I do have, |
| | 21 | maybe, possibly a bias.  Like I respect law enforcement |
| | 22 | officers greatly.  I know you've been asking this all day. |
| | 23 | So, like, I do maybe worry that it could play a bias in a |
| | 24 | sense.  Of course, I'd try my best to be fair, but possibly. |
| 03:45:52 | 25 | MR. WILKE:  Okay.  Now, Judge Carter will tell you |

*Deborah D. Parker, U.S. Court Reporter*

03:46:10  1    if you were chosen as a juror in this case that you have to

2    treat all witnesses equally and apply the law as he gives it

3    to you.

4          And Mr. Staples, here, is going to ask you if you

03:46:22  5    could follow that instruction.  I'm assuming your answer is

6    you would do your best to follow that instruction?  Is that

7    accurate?

8          PROSPECTIVE JUROR:  Yeah, I'd try.

9          MR. WILKE:  As counsel for Mr. Le, the defendant,

03:46:35  10    should I be concerned, though, that based on your personal

11    experience, you might look at the case more favorably to the

12    prosecution and law enforcement than you would to the

13    defendant?

14          PROSPECTIVE JUROR:  Can you repeat the question

03:46:53  15    from the beginning?  Should you be concerned, is that your

16    question?

17          MR. WILKE:  Would you look at this case more

18    favorably toward the Government and the prosecution than

19    toward the defendant, based on your personal experience and

03:47:06  20    what you've learned from talking to your brother?

21          PROSPECTIVE JUROR:  It is possible, yeah, that I

22    could be more favorable towards prosecution.

23          MR. WILKE:  Even if the Court told you that you

24    have to follow the law as he instructs you, correct?

03:47:23  25          PROSPECTIVE JUROR:  Yes.

95

03:47:37  1        MR. WILKE:  You had indicated as well some

2    possible financial hardship, if you were chosen as a juror.

3        PROSPECTIVE JUROR:  True.

4        MR. WILKE:  Would that affect your ability to

03:47:52  5    actually pay your monthly bills:  Your mortgage or your

6    rent?

7        PROSPECTIVE JUROR:  Yeah.  Bills and rent.  My

8    industry has been hit, like, a lot by COVID.  So usually in

9    the summer, it's really busy and we're able to save and not

03:48:05 10    really that -- that hasn't been the case this year.  So it's

11    the slowest season.  I'm not working as much, so it's

12    already hard so --

13        MR. WILKE:  Do you typically work at night or

14    during the day?

03:48:18 15        PROSPECTIVE JUROR:  I typically work starting at

16    4:00 o'clock at night.

17        THE COURT:  Just a moment.  Is that three days a

18    week, though, as stated in the questionnaire?

19        THE WITNESS:  Yeah.

03:48:28 20        THE COURT:  What nights do you work?

21        PROSPECTIVE JUROR:  I work, typically, Sunday,

22    Thursday, Friday.

23        THE COURT:  Okay.  Thank you.  And you start what

24    time, normally?

03:48:37 25        PROSPECTIVE JUROR:  Normally our hours vary.  This

*Deborah D. Parker, U.S. Court Reporter*

| | | |
|---|---|---|
| 03:48:41 | 1 | week and as has been explained to me going forward, I'm a |
| | 2 | bartender, and we're typically only open for lunch on the |
| | 3 | weekdays now and then lunch and dinner on weekends so -- |
| | 4 | THE COURT:  So you have the weekends.  It's the |
| 03:48:57 | 5 | Thursday that might be a concern? |
| | 6 | PROSPECTIVE JUROR:  Yeah.  I go in at 4:00. |
| | 7 | THE COURT:  So this Thursday we won't be in |
| | 8 | session, so it would be one day next week and another |
| | 9 | Thursday. |
| 03:49:07 | 10 | MR. WILKE:  Is it Thursday and Friday, you work? |
| | 11 | PROSPECTIVE JUROR:  Well, my schedule varies every |
| | 12 | week.  So weekdays, it's kind of like a direct conflict, |
| | 13 | because it's lunch right now that we're open from 11 to |
| | 14 | 6:00 p.m., so... |
| 03:49:26 | 15 | MR. WILKE:  Okay.  Would having so sit on this |
| | 16 | jury for 12 to 15 days over the next six weeks create a |
| | 17 | financial hardship for you? |
| | 18 | PROSPECTIVE JUROR:  I believe it would. |
| | 19 | MR. WILKE:  I have no further questions, |
| 03:49:38 | 20 | Your Honor. |
| | 21 | THE COURT:  Counsel, on behalf of the Government. |
| | 22 | MR. STAPLES:  One moment, please, Your Honor. |
| | 23 | *(Pause)* |
| | 24 | MR. STAPLES:  I have no questions, Your Honor. |
| 03:49:58 | 25 | The Government would stipulate on the financial |

*Deborah D. Parker, U.S. Court Reporter*

03:50:00   1    hardship, though.

2              MR. WILKE:  We'd stipulate as well, Your Honor.

3              THE COURT:  All right.  We're going to thank and

4    excuse you, because Counsel has stipulated.

03:50:08   5    Thank you very much.

6              Would you call another juror.

7              THE CLERK:  Sangjoon Lim.

8              THE COURT:  And Mr. Lim, have you heard all the

9    prior questions?

03:50:30  10              PROSPECTIVE JUROR:  Yes.

11              THE COURT:  And are there any questions on -- any

12    questions that you answered on the questionnaire that you

13    would like to change or modify?

14              PROSPECTIVE JUROR:  No.

03:50:41  15              THE COURT:  I want to thank you for filling out

16    the questionnaire so fully.

17              Would you be fair and impartial to both sides?

18              PROSPECTIVE JUROR:  Yes.

19              THE COURT:  And will you follow the law?

03:50:53  20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  Counsel, on behalf of the defense?

22              MR. WILKE:  Thank you, Your Honor.

23              Mr. Lim, is English your second language?

24              PROSPECTIVE JUROR:  Yes.

03:51:18  25              MR. WILKE:  How long have you been speaking

*Deborah D. Parker, U.S. Court Reporter*

98

03:51:21   1  English?

2          PROSPECTIVE JUROR:  I don't know.  10 years.

3          MR. WILKE:  When did you learn English?

4          PROSPECTIVE JUROR:  Since I came to the

03:51:30   5  United States.

6          MR. WILKE:  Which was -- how old were you when you

7  came to the United States?

8          PROSPECTIVE JUROR:  I don't know.  16.

9          MR. WILKE:  I'm sorry?

03:51:40 10          PROSPECTIVE JUROR:  15.

11          MR. WILKE:  And how old are you now, sir?

12          PROSPECTIVE JUROR:  26.

13          MR. WILKE:  So after coming to the United States,

14  how long before you could speak it?

03:51:53 15          PROSPECTIVE JUROR:  Maybe like six or seven years.

16          MR. WILKE:  So you've, basically, had some fluency

17  in English for the last three to four years?

18          PROSPECTIVE JUROR:  I don't know.

19          MR. WILKE:  Let me see if I can restate.

03:52:07 20          PROSPECTIVE JUROR:  Okay.

21          MR. WILKE:  As you were downstairs for much of the

22  morning, correct?

23          PROSPECTIVE JUROR:  Yes.

24          MR. WILKE:  Do you feel like you can understand

03:52:17 25  what was being discussed up here in Court?

*Deborah D. Parker, U.S. Court Reporter*

99

03:52:20  1                    PROSPECTIVE JUROR:  Yes.  But not 100 percent.

          2                    MR. WILKE:  May I speak to the Government,

          3     Your Honor?

          4          (Pause)

03:52:32  5                    MR. WILKE:  The parties would stipulate,

          6     Your Honor.

          7                    THE COURT:  Counsel, stipulated once again.

          8                    We're going to thank and excuse you, sir.

          9                    I'm sorry.  Counsel have stipulated.  We're going

03:52:42 10     to thank and excuse you, sir.  Thank you for filling out the

         11     questionnaire, Mr. Lim.

         12                    Call another prospective juror.

         13                    THE CLERK:  Carlos Flores.

         14          (Pause)

03:53:04 15                    THE COURT:  Mr. Flores, good afternoon.

         16                    PROSPECTIVE JUROR:  Good afternoon.

         17                    THE COURT:  Have you heard all of the prior

         18     questions when you were in the jury assembly room?

         19                    PROSPECTIVE JUROR:  Yes.

03:53:12 20                    THE COURT:  Are there any questions you'd like to

         21     modify or change on the jury questionnaire?

         22                    PROSPECTIVE JUROR:  No.

         23                    THE COURT:  Thank you for filling it out so

         24     completely.

03:53:20 25                    Would you be fair and impartial to both sides in

                           *Deborah D. Parker, U.S. Court Reporter*

03:53:23  1   this case?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Would you follow the law?

4           PROSPECTIVE JUROR:  Yes.

03:53:27  5   THE COURT:  Counsel, on behalf of the defense.

6           MR. WILKE:  Thank you Your Honor.

7           Mr. Flores, you expressed some strong feelings

8   about people who use illegal drugs in your questionnaire.

9           Do you recall that question?

03:53:45 10   PROSPECTIVE JUROR:  Drugs.  Yes, I did.

11          MR. WILKE:  Okay.  In this case, there will be

12  evidence that the defendant and certain witnesses in the

13  case used illegal drugs.

14          Would that color your view of the defendant and

03:54:06 15  whether he is guilty or innocent of the charges?

16          PROSPECTIVE JUROR:  No.

17          MR. WILKE:  Do you believe you could be fair to

18  the defendant, knowing that he had used illegal drugs?

19          PROSPECTIVE JUROR:  Yes.

03:54:18 20   MR. WILKE:  Okay.  You also indicated some strong

21  views or opinions on the gun laws of the United States?

22          PROSPECTIVE JUROR:  Well, I don't know much about

23  guns.  But, you know, guns -- I think I said that guns don't

24  kill people.  People kills -- I mean, we [sic] guns kill

03:54:46 25  people.  So, basically, that's what I -- what I think.  You

*Deborah D. Parker, U.S. Court Reporter*

03:54:50  1  know, guns, you know, they sitting here.  They're not going

2  to do anything unless you grab it and point it to somebody.

3          MR. WILKE:  Okay.  Well, do your views on the gun

4  laws or guns here in the United States, would that affect

03:55:08  5  your ability to be fair and impartial to both sides in the

6  case?

7          PROSPECTIVE JUROR:  No, I don't think so.

8          MR. WILKE:  Okay.  I have no further questions.

9          MR. STAPLES:  No questions, Your Honor.

03:55:26  10         THE COURT:  The peremptory will now pass to the

11  defense.  This would be the eighth peremptory, if you decide

12  to exercise it.

13         MR. WILKE:  The defense would thank and excuse

14  Mr. Flores, Your Honor.

03:55:36  15         THE COURT:  Mr. Flores, thank you very much, sir.

16  And thank you, once again, for filling out that

17  questionnaire.  Very much appreciated.

18         Call another juror, please.

19         THE CLERK:  Lawrence Ibarra.

03:56:03  20         THE COURT:  Mr. Ibarra, once again, did you hear

21  all the prior questions when you were in the jury assembly

22  room?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  And, once again, let me very humbly

03:56:11  25  thank you for filling out this questionnaire so completely.

03:56:14  1                PROSPECTIVE JUROR:  You're welcome.

         2                THE COURT:  Are there any questions you'd like to

         3    change or modify on this jury questionnaire?

         4                PROSPECTIVE JUROR:  I do not believe so.

03:56:21  5                THE COURT:  Would you be fair and impartial to

         6    both sides?

         7                PROSPECTIVE JUROR:  Yes.

         8                THE COURT:  And would you follow the law?

         9                PROSPECTIVE JUROR:  Yes.

03:56:28 10                THE COURT:  Counsel, on behalf of the defense?

        11                MR. WILKE:  Thank you.

        12                Mr. Ibarra, you're a law enforcement agent,

        13    correct?

        14                PROSPECTIVE JUROR:  Correct.

03:56:35 15                THE COURT:  Probation Officer?

        16                PROSPECTIVE JUROR:  Yes, sir.

        17                MR. WILKE:  You work for the court; is that

        18    correct?

        19                PROSPECTIVE JUROR:  Correct.  Probation Officer is

03:56:41 20    a branch of the court.

        21                THE COURT:  But you consider yourself to be a

        22    law enforcement officer, correct?

        23                PROSPECTIVE JUROR:  Correct.

        24                MR. WILKE:  Do you carry a gun in your job?

03:56:49 25                PROSPECTIVE JUROR:  Yes.

03:56:50  1          MR. WILKE:  And do you carry a badge?

2          PROSPECTIVE JUROR:  Yes.

3          MR. WILKE:  You routinely work with

4  law enforcement on, I think, gang teams and warrant

03:57:05  5  apprehension; is that correct?

6          PROSPECTIVE JUROR:  Currently, for the past two

7  years on a --

8      *(Court Reporter requests clarification for the*

9      *record.)*

03:57:17  10        PROSPECTIVE JUROR:  From the last two years to

11  current, assigned to the Orange County Sheriff's Department,

12  Tactical Apprehension Team and 10 years prior, to the

13  Santa Ana Gang Violence Suppression Unit.

14         MR. WILKE:  The tactical apprehension team, is

03:57:32  15  that the SWAT team?

16         PROSPECTIVE JUROR:  All the members with the

17  exception of myself; yes, there is a SWAT team.

18         MR. WILKE:  The officers who use military-style

19  gear and to execute warrants and things like that, correct?

03:57:43  20        PROSPECTIVE JUROR:  Correct.

21         MR. WILKE:  And you participate in that?

22         PROSPECTIVE JUROR:  Correct.

23         MR. WILKE:  Okay.  Now, in your questionnaire, you

24  indicated that you would be more likely to believe the

03:57:53  25  testimony of a law enforcement officer over the testimony of

03:57:56  1    another witness.

2                Do you recall that?

3                PROSPECTIVE JUROR:  Yes.

4                MR. WILKE:  And that -- and I appreciate your

03:58:03  5    candor there.  That's based on your life experience working

6    in law enforcement; is that correct?

7                PROSPECTIVE JUROR:  Correct.

8                MR. WILKE:  Now, you also indicated strong

9    feelings about people who use illegal drugs?

03:58:26 10                PROSPECTIVE JUROR:  Correct.

11                MR. WILKE:  You come across that in your line of

12    work regularly?

13                PROSPECTIVE JUROR:  Yes.

14                MR. WILKE:  And, again, we'll hear evidence in the

03:58:37 15    case that the defendant, as well as several witnesses in the

16    case, are drug users?  Have used drugs.

17                PROSPECTIVE JUROR:  Correct.

18                MR. WILKE:  Knowing that about the defendant, do

19    you believe you could still be fair and impartial with

03:58:48 20    respect to the charges that he's charged with in this case?

21                PROSPECTIVE JUROR:  Yes.

22                MR. WILKE:  Sir, you understand that there's a

23    presumption of innocence?

24                PROSPECTIVE JUROR:  Yes.

03:59:05 25                MR. WILKE:  And you understand that the

*Deborah D. Parker, U.S. Court Reporter*

03:59:06   1    prosecution has the burden of proof beyond a reasonable

           2    doubt?

           3                PROSPECTIVE JUROR:  Correct.

           4                MR. WILKE:  And despite that -- despite your

03:59:30   5    understanding of that -- you still would be more likely to

           6    believe the testimony of a law enforcement officer over the

           7    testimony of another witness; is that correct?

           8                PROSPECTIVE JUROR:  Presuming that they're

           9    facts -- yes.

03:59:45  10                MR. WILKE:  No further questions, Your Honor.

          11                THE COURT:  Counsel, on behalf of Government?

          12                MR. STAPLES:  Thank you, Your Honor.

          13                I just want to follow up, sir, on that last

          14    question you were asked, because you're asked in the

03:59:55  15    abstract.

          16                You haven't heard any evidence in this case yet,

          17    right?

          18                PROSPECTIVE JUROR:  Correct.

          19                MR. STAPLES:  And you know, given your own

04:00:02  20    experience, that cases are decided based on evidence?

          21                PROSPECTIVE JUROR:  Yes.

          22                MR. STAPLES:  And so whether it comes to believing

          23    a witness or not, are you willing to wait until you hear

          24    actual evidence?

04:00:13  25                PROSPECTIVE JUROR:  Absolutely.

04:00:14  1              MR. STAPLES:  Are you waiting in the case of a

2    police officer to wait to see he or she testify [sic]?

3              PROSPECTIVE JUROR:  I'm sorry.  I didn't quite

4    understand you.

04:00:21  5              MR. STAPLES:  Are you willing to wait -- with

6    regards to a police officer, would you be willing to wait

7    until that person testifies before you decide whether

8    they're telling the truth?

9              PROSPECTIVE JUROR:  Yes.

04:00:30 10              MR. STAPLES:  Now, as a law enforcement officer,

11   you take an oath to uphold the law?

12              PROSPECTIVE JUROR:  Yes.

13              THE COURT:  That's an oath you take seriously?

14              PROSPECTIVE JUROR:  Yes, sir.

04:00:39 15              MR. STAPLES:  And if you become a member of this

16   jury, you realize you'll also be given an oath to uphold the

17   law, correct?

18              PROSPECTIVE JUROR:  Correct.

19              MR. STAPLES:  So if the judge instructs you what

04:00:48 20   the law is and one of his instructions includes that you

21   must treat each witness equally, will you follow that law?

22              PROSPECTIVE JUROR:  Yes.

23              MR. STAPLES:  Any doubt in your mind?

24              PROSPECTIVE JUROR:  No.

04:01:06 25              MR. STAPLES:  You understand that every person --

04:01:08  1  people from all walks a life come in to do jury service,

2  correct?

3              PROSPECTIVE JUROR:  Yes.

4              MR. STAPLES:  And they have all their own

04:01:16  5  experiences in life which can be quite different, correct?

6              PROSPECTIVE JUROR:  Correct.

7              MR. STAPLES:  But as a law enforcement officer and

8  a prospective juror, you understand that people from all

9  walks of life need to set aside their backgrounds to decide

04:01:28 10  cases based solely on the facts before them.

11              Do you understand that?

12              PROSPECTIVE JUROR:  Yes.

13              MR. STAPLES:  And do you agree with that?

14              PROSPECTIVE JUROR:  Yes.

04:01:35 15              MR. STAPLES:  If chosen as a juror, will you be

16  fair to both sides?

17              PROSPECTIVE JUROR:  Yes.

18              MR. STAPLES:  Thank you.  I have nothing further,

19  Your Honor.

04:01:41 20              THE COURT:  One quick question or two.  It's not a

21  disqualifier that you work in the probation department or

22  may be involved in law enforcement.  All professions.  In

23  fact, I show up every year and they kick me off in

24  Harbor Court as a juror.  But the fundamental question is:

04:02:07 25  When a witness is called, eventually, the jury is going to

04:02:10  1  listen to these witnesses, both sides, and then sort out who

2  is telling the truth, who is correct about perception.

3  Democracy is going to take place back in that jury room.

4         If, in fact, there is a presumption on that part

04:02:28  5  that by virtue of being the President of the United States

6  or law enforcement officer, in your mind, before that person

7  says anything on this witness stand that they are more

8  credible than a common sense, then I want you to candidly

9  tell me that.

04:02:48 10        Does that presumption exist in your mind?

11        PROSPECTIVE JUROR:  No, based on the facts that I

12  have heard -- well, testimony and the evidence presented.

13        THE COURT:  Okay.  Let me say it another way to be

14  certain.  The -- I don't know how much law enforcement is

04:03:10 15  going to be involved in this case yet.  We're going to hear

16  these facts for the first time.  It may be a lot; it may be

17  a little.  But, certainly, from the witness list, there will

18  be law enforcement officers testifying.  And if right to

19  begin with that law enforcement officer takes the stand, is

04:03:41 20  there a presumption in your mind that that law enforcement

21  officer is telling the truth?

22        PROSPECTIVE JUROR:  I'm hoping that everybody gets

23  up there and tells the truth.

24        THE COURT:  Sure.  Across the board.  And you'd

04:03:55 25  hope that a witness is telling the truth?

*Deborah D. Parker, U.S. Court Reporter*

04:03:57  1                PROSPECTIVE JUROR:  Correct.

      2                THE COURT:  Is that co-equal?

      3                PROSPECTIVE JUROR:  Yes.

      4                THE COURT:  Co-equal whether it's a

04:04:01  5  law enforcement officer or common citizen?

      6                PROSPECTIVE JUROR:  Yes.

      7  Q    Okay.  All right.  Counsel.  I'll see both of you for

      8  just a moment.

      9                We'll be right back with you.

04:04:10 10        *(The following was held at sidebar:)*

     11                THE COURT:  All right.  Counsel, on behalf of the

     12  defense.

     13                MR. WILKE:  We move to strike for cause

     14  Mr. Ibarra.

04:08:19 15                Although he gave inconsistent answers to the

     16  question about whether he could judge all witnesses in the

     17  same manner, his questionnaire clearly, clearly states that

     18  he would be more likely to believe testimony of a

     19  law enforcement officer over the testimony of another

04:08:24 20  witness.

     21                He says, Yes.  He says, Yes, due to life

     22  experiences in the workplace.  He is a longtime Deputy

     23  Probation Officer, who despite working for the court,

     24  identifies himself as a law enforcement officer.  He works

04:08:29 25  for the SWAT team on arrest warrants.  He has dealt

*Deborah D. Parker, U.S. Court Reporter*

04:08:30  1    repeatedly with people who use narcotics.

          2           Your Honor, I just think he's too close to

          3    law enforcement to be a fair and impartial in this case,

          4    particularly given inconsistent answers as to the question

04:08:33  5    about credibility of law enforcement.

          6           THE COURT:  Government.

          7           MR. STAPLES:  Unless there's a per se rule that

          8    somebody in law enforcement can't serve as a juror, I asked

          9    him the questions.  He understands what it means to take an

04:08:37 10    oath.  He understands what it means to follow the law, and

         11    he said he would do it.

         12           THE COURT:  The issue concerning drugs in this

         13    case cuts both ways.  The Court has been making [sic]

         14    *in limine* motions, involving a number of Government

04:08:42 15    witnesses and their use of drugs which will affect their

         16    credibility and the defendant allegedly being involved in a

         17    debt payback over a drug transaction with the alleged

         18    victim.

         19           Second, the answer to Question No. 9:

04:08:47 20           "Would you be more likely to believe the

         21           testimony of a law enforcement officer

         22           over the testimony of another witness?

         23           Please, explain:"

         24           "Yes," period.  "Due to life experiences in the

04:08:51 25    workplace."  I think there's been a successful

*Deborah D. Parker, U.S. Court Reporter*

04:08:52  1    rehabilitation.  If this was the original bias -- and what I

2    really see is a disqualification because of his work, and

3    I'm not inclined to disqualify him simply because he's a

4    Probation Officer or former deputy sheriff.

04:08:57  5         I'm going to accept the wording, as I would every

6    other juror, and find that he's credible in terms of the

7    questions that they're going to be asked.  And I'm not going

8    to grant the motion for cause.

9         All right.  Counsel, let's resume.

04:09:02 10    *(Sidebar discussion concluded.)*

11    *(The following proceedings were had in open court*

12    *in the presence of the prospective jury:)*

13         THE COURT:  Thanks, Deborah.

14         We're back on the record in the presence of the

04:09:04 15    jury.  All counsel, the defendant are present.

16         The peremptory would now pass to the defense.

17         MR. WILKE:  Thank you, Your Honor.

18         The defense would thank and excuse Mr. Ibarra.

19         THE COURT:  Mr. Ibarra, thank you very much.

04:09:08 20         I appreciate you filling out the questionnaire so

21    completely.

22         PROSPECTIVE JUROR:  Thank you, Your Honor.

23         THE COURT:  Call another juror, please.

24         THE CLERK:  Ishinder Kaler.

04:09:11 25         THE COURT:  Thank you.

04:09:11  1          Mr. Kaler, do you have a microphone, sir?
       2   Excellent.
       3          PROSPECTIVE JUROR:  Hello!
       4          THE COURT:  Have you heard all the prior questions
04:09:14  5   when you were in the jury assembly room?
       6          PROSPECTIVE JUROR:  Yes.
       7          THE COURT:  Is there anything on the questionnaire
       8   that you would care to change or to modify?
       9          PROSPECTIVE JUROR:  No.
04:09:23 10          THE COURT:  Would you be fair and impartial to
      11   both sides?
      12          PROSPECTIVE JUROR:  Yes.  I'll do my best.
      13          THE COURT:  Would you follow the law?
      14          PROSPECTIVE JUROR:  Yes.
04:09:30 15          THE COURT:  Let me turn you over to counsel.  Once
      16   again, thank you for completely filling out the
      17   questionnaire.
      18          Counsel, on behalf of the defense.  Do you have
      19   that questionnaire with you?
04:09:39 20          MR. WILKE:  I do, yes.  Thank you, Your Honor.
      21          Mr. Kaler, you indicated your father works for
      22   law enforcement?
      23          PROSPECTIVE JUROR:  No, he does not.  He just
      24   works for the state.
04:09:48 25          MR. WILKE:  Is it California -- who does he work

04:09:51   1   for?

           2           THE WITNESS:  It's CDTFA.  I think it's, like,

           3   California Department of Taxes and Finance.

           4           THE COURT:  Counsel, could we move for both

04:10:00   5   parties to Question No. 40, immediately.  In other words,

           6   all these questions aren't going to make a difference if

           7   there's a financial hardship.

           8       *(Pause)*

           9           MR. WILKE:  So, Mr. Kaler, you're a customer

04:10:30  10   service representative?

          11           PROSPECTIVE JUROR:  Yes.  Yes.

          12           THE COURT:  And do you work salary or as an hourly

          13   wage?

          14           PROSPECTIVE JUROR:  I work hourly.

04:10:38  15           MR. WILKE:  Okay.  And what is your typical shift?

          16           PROSPECTIVE JUROR:  My typical shift is from

          17   10:30 a.m. to 6:30 p.m.

          18           THE COURT:  Just a moment now.  Will your employer

          19   pay for your jury service?

04:10:53  20           PROSPECTIVE JUROR:  He will not.

          21           THE COURT:  Okay.  That's the basic question.  And

          22   are you certain?  Have you checked?

          23           PROSPECTIVE JUROR:  Yes, I've asked him.  He can't

          24   pay me, if I'm not, like, actually working.

04:11:03  25           THE COURT:  So it's a small company?

*Deborah D. Parker, U.S. Court Reporter*

04:11:05   1                    PROSPECTIVE JUROR:  Yeah.

           2                    THE COURT:  Counsel, please, proceed now.

           3                    MR. WILKE:  Thank you.

           4                    Do you have the ability through your employer to

04:11:10   5      change your shift; for instance, to work in the evenings, if

           6      you were selected as a juror in this case?

           7                    PROSPECTIVE JUROR:  I cannot, no.

           8                    MR. WILKE:  May I speak to counsel, Your Honor?

           9                    THE COURT:  Please.

04:11:19  10                    MR. WILKE:  The parties would stipulate,

          11      Your Honor.

          12                    THE COURT:  They're going to thank and excuse you,

          13      sir.  We saw that in Question 40.  Thank you for filling out

          14      the questionnaire.

04:11:28  15                    Would you call another juror, please.

          16                    THE CLERK:  Shari Vega.

          17                    THE COURT:  Ms. Vega, have you heard all the prior

          18      questions?

          19                    PROSPECTIVE JUROR:  Yes.

04:11:45  20                    THE COURT:  Is there anything that you would

          21      change or modify on the jury questionnaire?

          22                    PROSPECTIVE JUROR:  No.

          23                    THE COURT:  The question is so meaningful:  Would

          24      you be fair and impartial to both sides?

04:11:55  25                    Would you be fair and impartial to both sides?

*Deborah D. Parker, U.S. Court Reporter*

04:11:57  1                PROSPECTIVE JUROR:  Yes, I believe so.

          2                THE COURT:  Would you follow the law?

          3                PROSPECTIVE JUROR:  Yes.

          4                THE COURT:  Let me turn now to counsel.

04:12:16  5                MR. WILKE:  Good afternoon, Ms. Vega.  How are

          6    you?

          7                PROSPECTIVE JUROR:  Hello.

          8                THE COURT:  I just want to follow up on one of

          9    your answers in the questionnaire.

04:12:23 10                You were a victim many years ago of a crime,

         11    correct?

         12                PROSPECTIVE JUROR:  How many years?

         13                MR. WILKE:  Looks like 39.

         14                PROSPECTIVE JUROR:  Yeah, a long time.

04:12:31 15                MR. WILKE:  A long time ago.

         16                PROSPECTIVE JUROR:  1980-something.

         17                THE COURT:  Did you in -- they caught the person

         18    who victimized you?

         19                PROSPECTIVE JUROR:  Yes.

04:12:39 20                MR. WILKE:  Did you testify in court?

         21                PROSPECTIVE JUROR:  I did.

         22                MR. WILKE:  Did that -- how was that experience

         23    for you?  Did it affect your view of the criminal justice

         24    system?

04:12:48 25                PROSPECTIVE JUROR:  No, it didn't.

04:12:49    1          MR. WILKE:  Okay.  Do you think that either the

2    event of being a victim of a crime or the experience of

3    testifying in court would color your perception of the

4    evidence in this case?

04:13:00    5          PROSPECTIVE JUROR:  No.

6          MR. WILKE:  Do you believe that you could evaluate

7    the evidence fairly and impartially in this case?

8          PROSPECTIVE JUROR:  Yes.

9          MR. WILKE:  May I have a moment, Your Honor?

04:13:23   10       *(Pause)*

11          MR. WILKE:  No further questions, Your Honor.

12          THE COURT:  Counsel, on behalf of the Government.

13          MR. STAPLES:  No questions, Your Honor.

14          THE COURT:  The peremptory would pass back to the

04:13:42   15    Government.  This would be the sixth peremptory, if you

16    choose to exercise it.

17          MR. STAPLES:  Your Honor, the Government accepts

18    the panel as presently constituted.

19          THE COURT:  This would pass now to the defendant.

04:13:54   20    This would be the 10th peremptory, if you decide to exercise

21    it.

22          MR. WILKE:  Defense would accept the panel,

23    Your Honor.

24          THE COURT:  Let me inquire of Ms. Vega.

04:14:05   25          Can you sit with us for this period of time?

*Deborah D. Parker, U.S. Court Reporter*

04:14:08   1          PROSPECTIVE JUROR:  Yes, I can.

2          THE COURT:  Ladies and gentlemen, I'm going to ask

3    the 12 of you to stand with me and raise your right hand.

4    And Debbie will administer an oath.  She's the clerk of the

04:14:17   5    court.

6          (Jury sworn.)

7          THE COURT:  If you would, please, be seated for a

8    moment and bear with us, because I don't want to bring 50

9    people downstairs back tomorrow.  I'd like to get the four

04:14:42  10    alternates, and I'm going to ask all of you folks, with the

11    exception of the four jurors, to move to this side of the

12    courtroom.

13          So the gentleman in the green jacket, would you

14    move to this side.  Would all my prospective jurors just

04:14:55  15    pick a red dot over here so we have social distancing.  And

16    now --

17          You asked about the seats.  I got some seats for

18    all alternate jurors today.

19          (Pause)

04:16:00  20          THE COURT:  Counsel, four alternates by agreement;

21    is that correct?

22          MR. STAPLES:  Correct, Your Honor.

23          MR. WILKE:  Two, yes.

24          THE COURT:  All right.  And if all of you folks

04:16:23  25    would be so kind to bear with us, just a few more minutes.

*Deborah D. Parker, U.S. Court Reporter*

04:16:28 1  It saves us bringing back 50 jurors tomorrow.  We could

2  literally start with the evidence in the morning.

3        So if you would call four prospective alternates.

4        THE CLERK:  Kenia Lares.  Jenny Parsons.

04:16:44 5  THE COURT:  Now, just one moment.  My apologies.

6        So the first one would be Kenia Lares; is that

7  correct?

8        THE CLERK:  Yes, Your Honor.

9        THE COURT:  And Ms. Lares, would you find No. 13.

04:17:07 10     *(Pause)*

11        THE COURT:  Thank you so much.

12        And then the next one.

13        PROSPECTIVE JUROR:  Jenny Parsons.

14        THE COURT:  Ms. Parsons, if you'd be so kind.

04:17:16 15  Would you go down that row.  Ms. Lares, just stand there.

16  There's seat No. 14.  Clear down by the wall.

17     *(Pause)*

18        THE COURT:  And now would you call the next.

19        THE CLERK:  Carlos Villanueva.

04:17:47 20  THE COURT:  Thank you, sir.  And, hopefully, your

21  seat, Mr. Villanueva, has No. 15 in it.

22        PROSPECTIVE JUROR:  Yes.

23        THE COURT:  And the next.

24        THE CLERK:  Damian Chow.

04:18:07 25  THE COURT:  And I think it was

04:18:07  1    Villanueva Hernandez.  Is that your last name, sir:

2    Villanueva Hernandez?

3                    PROSPECTIVE JUROR:  Yes.

4                    THE COURT:  And this would be Damian Chow.

04:18:19  5        So each of you, the same basic question, beginning

6    with Ms. Lares; and that is, is there any change or

7    modification that you would make to your jury questionnaire?

8                    PROSPECTIVE JUROR:  Yes.

9                    THE COURT:  And I need a microphone handed to you.

04:18:38  10                    What change would you like to make?

11                    PROSPECTIVE JUROR:  Towards the end, it asks if

12    there are any obstacles that would prevent me from coming to

13    court.

14                    And I hadn't realized that at first, but I don't

04:18:47  15    have a car.  The first day, I was fortunate enough that my

16    friend didn't have -- that they had the day off, so they

17    could take me.  And today my mom had to go two hours late to

18    work to take me.

19                    THE COURT:  I see.  This was an accident?

04:19:11  20                    PROSPECTIVE JUROR:  What was an accident?

21                    THE COURT:  Once again, tell me what happened.

22                    PROSPECTIVE JUROR:  I hadn't written -- like one

23    of the last questions it asked if there's an obstacle, and I

24    hadn't realize that I don't have a car to come here, because

04:19:25  25    I live in Anaheim.

120

04:19:26   1              THE COURT:  I see.  So you have no transportation

           2    here?

           3              PROSPECTIVE JUROR:  No.

           4              THE COURT:  All right.  Ms. Parsons, any changes

04:20:11   5    that you'd like to make to your questionnaire or

           6    modifications?

           7              PROSPECTIVE JUROR:  I only want to expand on the

           8    financial hardship portion.

           9              THE COURT:  I saw that.  And, please, do so.

04:20:27  10              PROSPECTIVE JUROR:  I have two jobs.  I am an

          11    independent contractor on one of my jobs and the other, my

          12    employer only pays three days' jury duty.  And I live by

          13    myself.  I rent.  And it would be an extreme hardship for

          14    me.

04:20:48  15              THE COURT:  I'm going have counsel check this.

          16    I've seen that on the questionnaire.  I want them to pull

          17    these questionnaires and see that for themselves.

          18              Question 40, Counsel.

          19              Now, before we ask you if you would be fair and

04:21:00  20    impartial for a moment, would you pass it back to

          21    Mr. Villanueva, who's directly behind you to your left.

          22              Are there any modifications or changes you would

          23    like to make to the jury questionnaire?

          24              PROSPECTIVE JUROR:  Yeah.  Regarding -- to the

04:21:22  25    police, if I would -- short story -- long story short, I

04:21:29  1    just want to say your example made it clear, so, yeah, I do

2    see how in front of the Court everyone should try to do

3    their best to tell the truth.  I'll keep in mind on that,

4    even though I have some biases.  Other than that, no.

04:21:53  5          THE COURT:  If I neglected, I meant Mr. Hernandez.

6          PROSPECTIVE JUROR:  So it's two last names.  It's

7    "Villanueva Hernandez," but you [sic] can go by "Hernandez."

8          THE COURT:  And in Question No. 8, you stated you

9    had a prior stop that you believed was due to your race, by

04:22:16 10   the police?

11          PROSPECTIVE JUROR:  Yeah.  So during my college

12   years, I was in Pomona, so LA County.  So I was driving a

13   '97 green Honda, so a couple of times I got stopped or at

14   checkpoints I got, like, comments that kind of left a sour

04:22:36 15   taste from the police.

16          THE COURT:  Do you believe that you would be fair

17   and impartial to both sides?

18          PROSPECTIVE JUROR:  Like I said, thanks to your

19   example, I think I'll -- yeah.  I mean, I'll do my best to

04:22:48 20   be fair.

21          THE COURT:  And then back to Mr. Chow, I believe,

22   in the back right next to you.  If you would hand the

23   microphone.  Mr. Chow.

24          Mr. Chow, any changes or modifications to your

04:23:09 25   questionnaire?

122

04:23:10  1              PROSPECTIVE JUROR:  No.

        2              THE COURT:  Would you be fair and impartial to

        3  both sides?

        4              PROSPECTIVE JUROR:  Yes.

04:23:15  5              THE COURT:  Would you follow the law?

        6              PROSPECTIVE JUROR:  Yes.

        7              THE COURT:  Now, if you'd hand the microphone back

        8  up for a moment to Ms. Parsons, who is in front of you, or

        9  Ms. Lares, it doesn't matter.  Either one.

04:23:27 10              Ms. Lares, do you believe you would be fair and

       11  impartial to both sides?

       12              PROSPECTIVE JUROR:  Yes.

       13              THE COURT:  Would you follow the law?

       14              PROSPECTIVE JUROR:  Yes.

04:23:32 15              THE COURT:  So it's a transportation problem that

       16  is causing difficulty?

       17              PROSPECTIVE JUROR:  Can you repeat that?

       18              THE COURT:  It's the transportation problem that

       19  we have?

04:23:41 20              PROSPECTIVE JUROR:  Yeah.

       21              THE COURT:  And then, Ms. Parsons.

       22              PROSPECTIVE JUROR:  Yes.

       23              THE COURT:  If you'd pass the microphone.

       24              Would you be fair and impartial to both sides?

04:23:51 25              PROSPECTIVE JUROR:  Yes, I would.

04:23:52  1          THE COURT:  We understand the financial concerns,

        2   but I want to make certain that you'd follow the law as

        3   well.

        4          PROSPECTIVE JUROR:  Yes.

04:23:57  5          THE COURT:  Then, Mr. Wilke, I'm going to turn

        6   these four jurors over to you and then the Government.

        7          MR. WILKE:  Thank you.

        8          Mr. Chow --

        9          PROSPECTIVE JUROR:  Yes.

04:24:08 10          MR. WILKE:  -- one of your answers was in response

       11   to the question about a physical, mental or emotional

       12   condition that might affect your ability to serve as a

       13   juror.

       14          Do you recall your answer?

04:24:20 15          PROSPECTIVE JUROR:  Yes.

       16          MR. WILKE:  If chosen as a juror in this case in

       17   that -- I know we're picking alternates now.  But if you

       18   were eventually seated as a juror in this case, you would be

       19   required to deliberate with your federal -- your other

04:24:35 20   jurors.

       21          Do you understand that?

       22          PROSPECTIVE JUROR:  Yes.

       23          MR. WILKE:  Would you have difficulty expressing

       24   your views in the jury room, given what you expressed in

04:24:44 25   response to your answer?

*Deborah D. Parker, U.S. Court Reporter*

04:24:45   1                    PROSPECTIVE JUROR:  I think it would more just be

           2    a tendency to not say things, to make things end sooner due

           3    to discomfort.

           4                    MR. WILKE:  So you would hold back your opinions

04:24:56   5    or your views of the evidence in the jury room?

           6                    PROSPECTIVE JUROR:  If I thought it would cause

           7    things to take more time, yes.

           8                    MR. WILKE:  Okay.  You understand that it's

           9    important that both sides have 12 jurors actively

04:25:08  10    deliberating.  That's part of the system here that ensures

          11    that this process works?

          12                    PROSPECTIVE JUROR:  Yes.

          13                    MR. WILKE:  Do you think you could be a full

          14    participant in the jury room, based on your medical

04:25:21  15    condition?

          16                    PROSPECTIVE JUROR:  I would do my best.

          17                    MR. WILKE:  I appreciate that.  Do you think your

          18    medical condition, though, would inhibit you from fully

          19    participating in the deliberations?

04:25:34  20                    PROSPECTIVE JUROR:  Probably.

          21                    MR. WILKE:  Could you pass the microphone to

          22    Ms. Parsons seated in the front row.

          23         *(Pause)*

          24                    MR. WILKE:  Good afternoon, Ms. Parsons.

04:25:58  25                    PROSPECTIVE JUROR:  Good afternoon.

04:25:59  1    MR. WILKE:  So I'd like, if you could -- you've

2    heard Judge Carter talk about the commitment that's required

3    in this case, probably 12 to 15 days.  I think that's the

4    number that's been thrown out there.  That's probably the

04:26:17  5    high end.  If you were required to sit as a juror --

6          You've already been here two days, correct?

7          PROSPECTIVE JUROR:  Uh-huh.

8          THE COURT:  And your employer pays a total of

9    three?

04:26:26  10          PROSPECTIVE JUROR:  Yes.

11          MR. WILKE:  So it sounds like you might have nine

12    to 13 more days of jury service where you didn't get paid.

13    Is that your understanding as well?

14          PROSPECTIVE JUROR:  Yes.

04:26:40  15          MR. WILKE:  Can you explain to the Court how that

16    would affect you financially in terms of your ability to

17    just pay your bills this next month?

18          PROSPECTIVE JUROR:  Oh, it would devastate me,

19    right now.  I have my car -- and my dealer [sic] getting

04:26:55  20    fixed, and I have about $3,000 just to get it out, because

21    of the transmission problem.  So it's just a lot.

22          MR. WILKE:  Okay.  You would be unable to pay your

23    personal bills if you had to sit for another nine to 13 days

24    without getting paid?

04:27:16  25          PROSPECTIVE JUROR:  Absolutely.

*Deborah D. Parker, U.S. Court Reporter*

126

04:27:20  1           MR. WILKE:  Could you pass the microphone to

         2  Ms. Lares.

         3           Am I pronouncing your name correctly?

         4           PROSPECTIVE JUROR:  Lares.

04:27:29  5           MR. WILKE:  Lares.

         6           PROSPECTIVE JUROR:  Yeah.

         7           MR. WILKE:  So you have a transportation problem,

         8  correct?

         9           PROSPECTIVE JUROR:  Yes.

04:27:37 10           MR. WILKE:  How far from the court do you live?

        11           PROSPECTIVE JUROR:  About 20 to 30 minutes,

        12  depending on traffic.

        13           MR. WILKE:  20 or 30 minutes by car?

        14           PROSPECTIVE JUROR:  Yes.

04:27:45 15           THE COURT:  Is there any available public

        16  transportation for you to take?

        17           PROSPECTIVE JUROR:  Yes, but my mom doesn't like

        18  it when I go alone on the bus.

        19           MR. WILKE:  And that is -- is that out of concern

04:27:58 20  for your safety?

        21           PROSPECTIVE JUROR:  Yes.

        22           MR. WILKE:  And you're 19 years old?

        23           PROSPECTIVE JUROR:  Yes.

        24           MR. WILKE:  Is your -- do you have family members

04:28:08 25  or friends that can get you to court for 12 to 15 days over

*Deborah D. Parker, U.S. Court Reporter*

04:28:13  1   the next six weeks?

2         PROSPECTIVE JUROR:  I wouldn't think so.  Most of

3   them don't drive on the freeway and the ones that do also

4   work and their schedules vary, so I couldn't depend on

04:28:26  5   anyone.

6         MR. WILKE:  Could you finally pass the microphone

7   to Mr. Villanueva seated in the back.

8         Now, Mr. Villanueva Hernandez, both in your

9   questionnaire and today here in court, you openly expressed

04:28:49  10  a bias in favor of law enforcement.

11        Is that accurate?

12        PROSPECTIVE JUROR:  Not in favor.  Against it.

13  But, yeah, I did have a bias.

14        MR. WILKE:  A bias against law enforcement?

04:29:02  15  THE COURT:  Counsel, Question No. 9.  You have the

16  opposite.

17        MR. WILKE:  Okay.  I misread it.  I'm sorry.

18        PROSPECTIVE JUROR:  No problem.

19        MR. WILKE:  And based on that bias against

04:29:14  20  law enforcement, despite that, do you believe you could

21  still follow the Court's instructions and evaluate the

22  testimony of all witnesses equally?

23        PROSPECTIVE JUROR:  Yeah, I believe so.  Yeah.

24  Given evidence and whatever else is presented, I think I can

04:29:34  25  uphold it.

04:29:35  1          MR. WILKE:  Okay.  I have no further questions.

2          THE COURT:  And, Counsel, on behalf of the

3   Government.

4          PROSPECTIVE JUROR:  Just one comment.  I know

04:29:40  5   tomorrow we have to meet.  And my employer -- I'm in the

6   process of dealing with the contract so would work on

7   contracts.  And tomorrow there's an important meeting I have

8   to attend.  I don't know if -- besides that, I'm free.  But

9   tomorrow is, like, really important to me.

04:30:02 10          THE COURT:  We'd have to be in session tomorrow.

11   We can't hold up 12 jurors.

12          PROSPECTIVE JUROR:  So the thing is, do we have

13   like times where I could -- is there times, schedules and

14   everything?  Because if I don't have time, I can't schedule

04:30:15 15   around it.

16          THE COURT:  We'll give you a time schedule.  For

17   instance, we know that this week, we'll be off on Thursday.

18          PROSPECTIVE JUROR:  Okay.

19          THE COURT:  We know we'll be in session next

04:30:26 20   Monday, Tuesday, Wednesday and Thursday, but then you're off

21   basically 10 days.  December 1st.  And we'll mark that down

22   literally on calendar for all of you.

23          PROSPECTIVE JUROR:  Yeah.  As long as it's on a

24   calendar, I can work around it.

04:30:37 25          MR. WILKE:  For tomorrow -- I think we're going to

04:30:39    1    hopefully break for lunch between noon and --

            2                THE COURT:  Thank you very much, Counsel.

            3                Counsel, on behalf of the Government.

            4                MR. STAPLES:  Sir, I think you just stated that

04:30:50    5    you would do your best to try and treat Government and

            6    defense witnesses equally.

            7                Is that a fair statement?

            8                PROSPECTIVE JUROR:  Yeah.  It's a fair statement.

            9                MR. STAPLES:  And you understand that if you are

04:31:04   10    part of the jury or asked to render a verdict, you're going

           11    to be asked to render a verdict on the evidence you hear

           12    from the witnesses you hear in this case.  You know that,

           13    right?

           14                PROSPECTIVE JUROR:  Yeah.

04:31:14   15                MR. STAPLES:  And you're not being asked to render

           16    a verdict based on something that happened in your past,

           17    right?

           18                PROSPECTIVE JUROR:  Yeah.  I understand.

           19                MR. STAPLES:  And is that -- that's a pretty easy

04:31:24   20    distinction for you to make in your mind?

           21                PROSPECTIVE JUROR:  Yeah.  Yeah.

           22                MR. STAPLES:  I mean, you could understand as a

           23    prosecutor, my ears prick [sic] up when I hear someone say,

           24    *I don't like police officers.*  You understand that?

04:31:36   25                PROSPECTIVE JUROR:  I understand.  But I

04:31:37  1    understand you that this is its own little world.

2         MR. STAPLES:  Right.  And I, frankly, don't have a

3    problem with your point of view.  That's -- you're certainly

4    entitled to it.  I just want to know if you can tell me that

04:31:51  5    when we put our witnesses on the stand, you're going to

6    treat them just like anybody else?

7         PROSPECTIVE JUROR:  Yeah.

8         MR. STAPLES:  You and your other jurors are the

9    ones who figure out who's telling the truth and who isn't?

04:32:03 10         PROSPECTIVE JUROR:  Exactly.

11         MR. STAPLES:  And that's based on what happens.

12    You heard me say that, maybe, before.  It happens in this

13    courtroom is what you base that on, right?

14         PROSPECTIVE JUROR:  Yeah.

04:32:11 15         MR. STAPLES:  Okay.  And you're comfortable doing

16    that?

17         PROSPECTIVE JUROR:  Yeah.

18         MR. STAPLES:  Okay.  That's all.  No further

19    questions, Your Honor.

04:32:18 20         THE COURT:  Do you two want to meet and confer for

21    just a moment?

22       (Pause)

23         THE COURT:  Counsel, on the 4:30 matter, I'm going

24    to ask you to remain out in the hallway.  So if you're the

04:32:58 25    parties involved, we're going to need this courtroom for

*Deborah D. Parker, U.S. Court Reporter*

| | | |
|---|---|---|
| 04:33:02 | 1 | potential jurors.  We'll call you in, in a moment. |
| | 2 | MR. STAPLES:  Your Honor, the parties would |
| | 3 | stipulate and ask the Court to thank and excuse Ms. Lares |
| | 4 | and Ms. Parsons on hardship grounds. |
| 04:33:13 | 5 | THE COURT:  Is that stipulated to by the defense |
| | 6 | as well? |
| | 7 | MR. WILKE:  Yes, Your Honor. |
| | 8 | THE COURT:  So Ms. Parsons and Ms. Lares, correct? |
| | 9 | There's a stipulation for excusing them? |
| 04:33:25 | 10 | MR. STAPLES:  Yes, Your Honor. |
| | 11 | THE COURT:  Counsel? |
| | 12 | MR. WILKE:  I'm sorry, Your Honor.  The question? |
| | 13 | THE COURT:  Ms. Parsons and Ms. Lares, are you |
| | 14 | also stipulating that they're being excused? |
| 04:33:35 | 15 | MR. WILKE:  Yes. |
| | 16 | THE COURT:  All right.  Ms. Parsons and Ms. Lares, |
| | 17 | thank you very much.  You're excused from these proceedings. |
| | 18 | And thank you for filling out the questionnaire. |
| | 19 | If you would call two more prospective jurors if |
| 04:33:49 | 20 | they're here. |
| | 21 | PROSPECTIVE JUROR:  Audrey Raaphorst. |
| | 22 | THE COURT:  Well, I'm going to have you take that |
| | 23 | far seat.  I think, if my memory is correct -- |
| | 24 | THE CLERK:  14. |
| 04:34:06 | 25 | THE COURT:  Yeah, take 14. |

04:34:10  1                    And, Deb, if you would be so kind, one more juror.

2                    THE CLERK:  Louis Lawent.

3                    THE COURT:  Just in case, Counsel, if there's any

4        exercise of peremptories, I would like to bring up that last

04:34:29  5        group of jurors.

6                    Then, Ms. Raaphorst, have you heard all the prior

7        questions?

8                    And we're going to get you a microphone.

9                    THE CLERK:  Your Honor, how many would you like

04:34:43 10        sent up?

11                    THE COURT:  Raaphorst.  First name, Audrey.

12                    MR. WILKE:  And then the first juror's name?

13                    THE COURT:  Audrey Raaphorst.

14                    MR. WILKE:  The other gentleman that the Court

04:34:59 15        just seated.

16                    THE COURT:  No, Counsel.  Thank you very much.

17                    Ms. Raaphorst, have you heard all the prior

18        questions?

19                    PROSPECTIVE JUROR:  Yes.

04:35:09 20                    THE COURT:  And have you -- would you change any

21        of your answers or modify any question that --

22                    PROSPECTIVE JUROR:  There is additional

23        information I would like to add that I would not like to add

24        in open courtroom.

04:35:20 25                    THE COURT:  Okay.  That would be -- we can

04:35:23  1    accommodate that in just a moment.

2              Let me -- hand the microphone over to Mr. Lawent.

3              THE WITNESS:  Lawent.

4              THE COURT:  We'll give you a microphone and thank

04:35:36  5    you, sir.

6              The same basic question:  Is there anything on

7    your questionnaire, sir, you would like to change or modify?

8              PROSPECTIVE JUROR:  No.

9              THE COURT:  Did you hear all the questions we

04:35:44 10    previously asked?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Would you be fair and impartial to

13    both sides?

14             PROSPECTIVE JUROR:  Yes.

04:35:48 15    THE COURT:  Would you follow the law?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Then, Counsel, how would like me to

18    conduct the inquiry of whatever information Ms. Raaphorst

19    would like to share?

04:36:04 20    MR. STAPLES:  I believe the most efficient manner

21    would be bring her briefly back into the hallway.

22             THE COURT:  Would you come with us for just a

23    moment.

24             And, ladies and gentlemen, excuse us for just a

04:36:16 25    second.

*Deborah D. Parker, U.S. Court Reporter*

04:36:16  1          *(The following was held at sidebar:)*

          2               THE COURT:  Miss Raaphorst is at sidebar with all

          3     counsel.

          4               And one of the concerns you had, initially, was

04:39:30  5     transportation; that you do not drive and your husband has

          6     to bring you at least 18 miles, 36 miles round-trip.

          7               PROSPECTIVE JUROR:  Correct.  And that will be

          8     twice a day:  In the morning and then come back in the

          9     evening.

04:39:34 10               THE COURT:  I understand.  So about 80 miles,

         11     let's say.  And you have out-of-town guests, including your

         12     sister, coming in from Austin, plus three grandsons coming

         13     to stay from today's date --

         14               PROSPECTIVE JUROR:  They're at the house already.

04:39:39 15     They've been out there while I was here.

         16               THE COURT:  -- to November 15th.  Probably because

         17     of COVID, you probably haven't been able to see them.

         18               Counsel, do you have questions?

         19               MR. STAPLES:  I'm sorry.  I'm not sure there was

04:39:43 20     additional information.

         21               PROSPECTIVE JUROR:  I didn't get a chance yet.

         22               THE COURT:  I just want to make sure I wasn't

         23     losing my mind.

         24               PROSPECTIVE JUROR:  If the Court wants to hear it,

04:39:46 25     this is a good time?

04:39:47  1          THE COURT:  I want to hear that additional

2    information.

3          PROSPECTIVE JUROR:  I have the transportation

4    issue, because he said -- asked the other lady about the

04:39:49  5    public stuff.  I wanted to add that my husband is not going

6    to allow me to take the bus.  And this issue of him bringing

7    me -- I'm not a battered wife, but --

8          THE COURT:  I understand.

9          PROSPECTIVE JUROR:  I don't want to deal with him.

04:39:54 10          THE COURT:  Thank you.

11          MR. WILKE:  Stipulate.

12          MR. STAPLES:  Stipulate.

13          THE COURT:  We're going to thank and excuse you.

14          PROSPECTIVE JUROR:  Thank you so much.

04:39:56 15          THE COURT:  Thank you.  You drive safe.

16      (Sidebar discussion concluded.)

17      (The following proceedings were had in open court

18       in the presence of the prospective jury:)

19          THE COURT:  Thank you, folks.

04:41:13 20          So, Deb, outside your presence, Ms. Raaphorst has

21    been excused for cause.

22          THE CLERK:  What number is she?  She's an

23    alternate.  And she was seated in, I believe, it's seat

24    No. 13.  So should have been an alternate.  She's excused

04:41:37 25    for cause.

04:41:38  1          So I would like to have an additional juror called

2    for seat No. 13.

3              THE CLERK:  I had her down in seat 14.

4              THE COURT:  Pardon?  That's fine.  Seat 14.

04:41:55  5              THE CLERK:  Haley Bocko.

6              THE COURT:  And if you'd be so kind and take seat

7    No. 14.

8        *(Pause)*

9              THE COURT:  Miss Bocko, you've been downstairs for

04:42:32 10    most of the day.  Have you heard most of questioning here in

11    court?

12              PROSPECTIVE JUROR:  Yes, I have.

13              THE COURT:  And those same questions:  Is there

14    anything on the questionnaire -- and thank you humbly for

04:42:44 15    filling this out, which probably -- in fact, we'll not only

16    have the jury.  We'll have the alternates today, instead of

17    five or six days, because of all of your participation.

18              Is there anything you would like to change on this

19    questionnaire?

04:42:55 20              PROSPECTIVE JUROR:  No.

21              THE COURT:  Modify it in any way?

22              PROSPECTIVE JUROR:  No thank you.

23              THE COURT:  Would you be fair and impartial to

24    both sides in this case?

04:43:02 25              PROSPECTIVE JUROR:  Yes.

04:43:02  1            THE COURT:  Would you follow the law?

2            PROSPECTIVE JUROR:  Yes.

3            THE COURT:  Now, Counsel, we have four prospective

4   jurors, just to remind us who is with us.  In the back, we

04:43:10  5   should have Mr. Villanueva and Ms. Chow -- Mr. Chow.  We

6   should have Ms. Bottle [sic]?

7            PROSPECTIVE JUROR:  Bocko.

8            THE COURT:  Bocko.  Thank you.

9            MR. WILKE:  May I inquire of the Court on one

04:43:34 10  question?  Is the current seating arrangement how they would

11  be seated?

12            THE COURT:  I may have turned the seats around,

13  but they will not be called in that order, if they replace

14  one of the sitting jurors.  They'll be randomly drawn.

04:43:46 15            MR. WILKE:  Got it.  Thank you.

16            THE COURT:  Just to get the cushions on the table,

17  we may rearrange those and their seating in just a moment.

18  But you have four prospective jurors to question.

19            MR. WILKE:  Thank you, Your Honor.

04:43:59 20            Mr. -- is it Lawrent?  Am I pronouncing your name

21  correctly?

22            PROSPECTIVE JUROR:  Lawent.  Correct.

23            MR. WILKE:  You did express in your questionnaire

24  strong feelings about people who use illegal drugs.

04:44:12 25            Do you recall that?

*Deborah D. Parker, U.S. Court Reporter*

04:44:12  1          PROSPECTIVE JUROR:  Yes.

2          MR. WILKE:  In this case, there will be evidence

3     that both Mr. Le, the defendant, and other witnesses in the

4     case used drugs -- used illegal drugs.

04:44:26  5          PROSPECTIVE JUROR:  Are you asking me about past

6     use or asking me about drug use involved in the killing?

7          MR. WILKE:  I'm just telling you that if you hear

8     evidence in the case about witnesses and/or Mr. Le using

9     drugs, would that affect your ability to otherwise judge

04:44:47 10   this case, based on the charges and the evidence as it

11    relates to the charges in this case?

12         THE COURT:  I think he's having difficulty --

13         PROSPECTIVE JUROR:  Not if it weren't involved in

14    the killing itself.

04:45:22 15      *(Pause)*

16         THE COURT:  Could you pass the microphone to

17    Ms. Bocko.

18         MR. WILKE:  Ms. Bocko, am I pronouncing your name

19    correctly?

04:45:56 20         PROSPECTIVE JUROR:  Yes, you are.

21         MR. WILKE:  So you have some education in

22    neurology and some training in biology and neurology?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  If you're chosen as a juror in this

04:46:06 25   case, you would likely hear evidence from experts qualified

04:46:11  1    in medicine, neurology, something along those lines.  Could

2    you evaluate that evidence and base your decision if you

3    were a juror, based on the evidence presented in court and

4    not bring your independent knowledge to consider that as

04:46:26  5    evidence in the case?

6              PROSPECTIVE JUROR:  Yes, I could.  I'm not an

7    expert.  I just had a couple of college courses that covered

8    it, so I do have a background.

9              MR. WILKE:  Okay.  Okay.  You understand the need,

04:46:37 10    though, that a verdict be based on only evidence presented

11    in court, correct?

12             PROSPECTIVE JUROR:  Yes.

13             MR. WILKE:  Do you understand that?

14             PROSPECTIVE JUROR:  Yes, I do.

04:46:46 15             MR. WILKE:  And you could follow that instruction?

16             PROSPECTIVE JUROR:  Uh-huh.

17             MR. WILKE:  Okay.  I have no further questions.

18             THE COURT:  Counsel?

19             MR. STAPLES:  Thank you, Your Honor.

04:47:07 20             Ma'am, you stated in your --

21             THE COURT:  Which -- who are you referring to?

22             MR. STAPLES:  Ms. Bocko.

23             THE COURT:  Thank you.

24             MR. STAPLES:  That in response to whether you

04:47:21 25    would favor the testimony of law enforcement officer over

140

04:47:24  1    another witness, you said "no," but then you said

2    law enforcement officers can be biased in how they view the

3    people they arrest.

4          So your first of part of your -- first part of

04:47:38  5    your answer when you say "no" is that you wouldn't treat

6    them more favorably, correct?

7          PROSPECTIVE JUROR:  Yes.

8          MR. STAPLES:  Is that based on something you

9    experienced or just read about?

04:47:49  10          PROSPECTIVE JUROR:  No, just in general.  They're

11    people too and everybody -- every witness that's going to

12    take the stand is going to have some bias in some way, so

13    it's your job to evaluate in what way they're biased.

14          MR. STAPLES:  That's what I wanted to hear.  You

04:48:01  15    probably heard me ask it of others.  But if you become part

16    of the jury, our world becomes this room for however long

17    the trial takes.  And what the case has to be decided upon

18    is the evidence you hear from the witness stand and the law

19    that the Judge gives you.  And all that we are asking and

04:48:24  20    Mr. Wilke is asking is that you approach each witness with

21    an open mind and whatever is in your background or anybody's

22    else background doesn't cover [sic] how you hear that

23    evidence and determine whether you think they're telling the

24    truth.

04:48:37  25          Do you think you can do that?

04:48:39   1            PROSPECTIVE JUROR:  Yes, I can.

           2            MR. STAPLES:  Could you, please, pass the

           3   microphone to Mr. Lawent.

           4        *(Pause)*

04:48:47   5            MR. STAPLES:  Good afternoon, sir.

           6            I notice that you're a writer and you're also a

           7   member of ASCAP.

           8            Do you write music?

           9            PROSPECTIVE JUROR:  Lyrics.

04:48:55  10            MR. STAPLES:  Lyrics.  Also, AFTRA.  Do you do

          11   television or film?

          12            PROSPECTIVE JUROR:  That was previously.

          13            MR. STAPLES:  Previously.  What sort of music do

          14   you write?

04:49:05  15            PROSPECTIVE JUROR:  Well, I write lyrics.

          16            MR. STAPLES:  Lyrics.  What type of music?

          17            PROSPECTIVE JUROR:  All types:  Rock, pop, folk,

          18   country, spiritual.  Everything.

          19            MR. STAPLES:  And I did notice -- your answer to

04:49:24  20   one question was:  You or a friend had any experience with a

          21   law enforcement agency that affects your views of

          22   law enforcement, generally?  You noted that you were very

          23   unhappy with how the police handle noise complaints?

          24            PROSPECTIVE JUROR:  Correct.

04:49:42  25            MR. STAPLES:  To what level does that take your

142

04:49:44  1    unhappiness with the police?

2              PROSPECTIVE JUROR:  Well, it takes it to a high

3    level, because I just don't think that quality of life

4    issues are handled seriously by the police and the courts.

04:49:55  5    I don't think they take it seriously.  And I believe a

6    person is almost powerless to get anything done in that

7    regard.

8              MR. STAPLES:  Okay.  And do those -- would those

9    feelings affect how you view what goes on in this courtroom?

04:50:10 10              PROSPECTIVE JUROR:  No.

11              MR. STAPLES:  You're sure of that?

12              PROSPECTIVE JUROR:  Yeah.  I don't think there's a

13    noise situation here, is there?

14              MR. STAPLES:  You haven't heard Mr. Wilke yet.

04:50:19 15         (Laughter.)

16              MR. STAPLES:  No, there is not.

17              PROSPECTIVE JUROR:  If there's barking dogs, you

18    got a problem here.

19              MR. STAPLES:  Federal courts don't handle noise

04:50:29 20    complaints.

21              One other question I have, the question:  Do you

22    watch fictional television program or the movies and so

23    forth related to crime?

24              You said, "Films of crimes."

04:50:56 25              Are there any examples you can give us?

04:50:58  1          PROSPECTIVE JUROR:  In other words, I will -- I'm

2    not watching police procedurals on TV.  I'm just watching

3    dramatic movies that may involve law enforcement, or

4    documentaries like the Ted Bundy thing, and things like

04:51:14  5    that.  I'm not talking about police procedures.  I've

6    watched them in the past, but it's not something that I'm a

7    regular viewer of.

8          MR. STAPLES:  All right.  Thank you, sir.

9          No further questions.

04:51:25 10          THE COURT:  Then by agreement, Counsel, is it

11    acceptable if the defense starts with the first peremptory?

12          MR. WILKE:  Yes, Your Honor.

13          THE COURT:  Do you wish to exercise a peremptory?

14          MR. WILKE:  We would accept the alternate panel,

04:51:37 15    Your Honor.

16          THE COURT:  Then, the peremptory would pass to the

17    Government.

18          MR. STAPLES:  The Government accepts the panel,

19    Your Honor.

04:51:47 20          THE COURT:  Then, I'm going to ask the four of

21    you, because I know it's extraordinary, that --

22          Mr. Villanueva, can you sit with us, as you

23    previously stated?

24          PROSPECTIVE JUROR:  What was that?

04:52:01 25          THE COURT:  Can you sit with us?

04:52:03  1           PROSPECTIVE JUROR:  Yeah.

2           THE COURT:  This period of time.  And we'll get

3     that on the calendar for you.

4           PROSPECTIVE JUROR:  As soon as I have a calendar,

04:52:07  5     I can work around stuff, but I need times and dates.

6           THE COURT:  I can't hear.  I'm sorry.  I need the

7     microphone.  I apologize.

8           PROSPECTIVE JUROR:  No worries.  So as long as I

9     have times and dates written down, I can work around it.

04:52:21 10     But being vague, it doesn't -- wouldn't work for me.

11           THE COURT:  We'll get the times and dates for

12     them.  In fact, we'll have them by mid-afternoon tomorrow so

13     all of you will go home with them, just as a reminder.

14           PROSPECTIVE JUROR:  Okay.

04:52:32 15           THE COURT:  Okay.  Ms. Chow -- Mr. Chow, I'm

16     sorry.  Damian.  My apologies.

17           Could you sit with us?

18           PROSPECTIVE JUROR:  I know I have long hair.

19        *(Laughter.)*

04:52:42 20           Can you sit with us?

21           PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Very humbly thank you.

23           Just to be sure, Mr. Lawrent, can you sit with us

24     here?

04:52:52 25           PROSPECTIVE JUROR:  Yes.

04:52:54  1          THE COURT:  Very humbly.  Is it --
        2          PROSPECTIVE JUROR:  Bocko.
        3          THE COURT:  Bocko, I'm sorry.
        4          Can you sit with us?
04:53:04  5          PROSPECTIVE JUROR:  Yes.
        6          THE COURT:  Would the four of you stand with me,
        7  please, and would you raise your right hand.
        8      *(Alternate jurors sworn.)*
        9          THE COURT:  If you will, please, be seated.
04:53:26 10          Counsel, I propose to excuse the jury this
       11  evening.  And, normally, we would try to start earlier.  But
       12  in an abundance of caution, I would like to start tomorrow
       13  at 9:00 o'clock, instead of earlier.  It will give all of
       14  you time to become situated.  And, tomorrow, ladies and
04:53:45 15  gentlemen, we expect that when you come into court, there
       16  will be a notepad on the seat that you occupy.
       17          You'll hear opening statements from counsel
       18  tomorrow, but those opening statements are a summary of what
       19  they believe the evidence will show.  It is not evidence.
04:54:00 20  It's a summary of what you're about to hear, hopefully.  And
       21  then we'll start the beginning of the case.
       22          We're actually ahead of schedule.  We thought that
       23  the jury selection might take as long as two days, maybe
       24  even three days.  So I think that we're on a schedule that
04:54:20 25  we'll get this case to you in a timely fashion.

*Deborah D. Parker, U.S. Court Reporter*

04:54:22  1            We'll also prepare a calendar for all of you,

      2    setting out the dates.  And tomorrow in the afternoon I'll

      3    talk to you about what time you feel comfortable convening.

      4    So during the recess, you might just discuss informally is

04:54:38  5    8:00 o'clock acceptable, 8:30 or 9:00?  But remember every

      6    hour that we get in that day, as long as you're fresh and as

      7    long as I'm making certain that counsel are focused and not

      8    pushing too hard, is an hour of continuity in terms of

      9    getting the case to you in a timely fashion.

04:54:57  10           So you're admonished in the strongest fashion not

     11    to discuss this case.  Not to form or express an opinion,

     12    even in your own mind.  Not to let anybody give you input.

     13    And I would suggest to you that you don't even tell people

     14    the type of case you're sitting on, whether it's even

04:55:15  15    criminal or civil, because the more information you get

     16    [sic], the more information they're liable to give back to

     17    you.  You're the only 12 jurors and four alternates who were

     18    selected who are ever going to hear all of the evidence in

     19    the case.

04:55:29  20           Now, when that fails and somebody loves you and

     21    pries, tell them to call 714-338-4545, and I'll talk to

     22    them.  I don't want to start over.  Understood?  And that

     23    outside input is not welcome.  So it's a kind way to say to

     24    you, don't let them reach out.

04:55:49  25           The next thing is:  Counsel for both sides are

*Deborah D. Parker, U.S. Court Reporter*

04:55:53  1  wonderful people.  They're trying to get away from you.

2  They may see you in the elevator, coming up in the morning.

3  They may come into the courthouse at the same time or a

4  little before.  They're trying to be invisible.  So they're

04:56:08  5  instructed by me not to reach out to you, not to engage you

6  in any conversation, in any way.  Please don't ask them what

7  time or the Court -- just don't engage them.  They're

8  literally trying to get away from you, by instruction of the

9  Court.

04:56:21  10          Now, Counsel, is there any other admonition that I

11  should give to the jurors this evening, on behalf of

12  Government and then the defense?

13          MR. STAPLES:  I believe the Court has already

14  instructed them they're not to discuss anything about the

04:56:33  15  case amongst themselves or with anyone else.  So other than

16  that, I don't think so.

17          THE COURT:  Counsel?

18          MR. WILKE:  No, Your Honor.

19          THE COURT:  We'll pre-instruct the jury tomorrow

04:56:41  20  morning, before we begin with the opening statements, by

21  agreement of Counsel.

22          Is that correct, Mr. Wilke?

23          MR. WILKE:  Yes, Your Honor.

24          MR. STAPLES:  Yes.

04:56:49  25          THE COURT:  For all of you prospective jurors,

04:56:52  1   both here and the very few that are left down in the jury

2   assembly room, I want to humbly thank you.  We almost got to

3   you.

4         (Laughter.)

04:57:03  5         THE COURT:  Pretty close.

6         Now, we have a nine-month case coming up, and we

7   have your names.  I'm just joking.

8         (Laughter.)

9         THE COURT:  But this has not been a satisfying

04:57:13  10  day.  But if you had a chance to serve on this or any other

11  case, it's quite an experience.  It really is.  You're the

12  American public.  Let me just humbly thank you on behalf of

13  the United States Federal Court for your attendance today.

14         You're excused as prospective jurors and all of

04:57:29  15  you good folks downstairs are excused with our greatest

16  appreciation.

17         UNIDENTFIED JUROR:  We report directly here, then?

18         THE COURT:  Actually, the door is going to be open

19  tomorrow.  We're going to start bringing you in, as early as

04:57:40  20  8:30, if you get here early.  And we actually have an

21  assembly room that we're going to put the 12 and the four

22  alternates in, and it's really a judge's chambers.  So

23  instead of a tiny room, you're going to live great.  It's a

24  big room.

04:57:57  25         Now, all of the alternates will keep the same

04:58:01  1    hours.  And, in fact, we can't start without you.  And if

2    one of the jurors is unable to continue -- and that means

3    there's been a tragedy.  Somebody has gotten sick.

4    Something bad has happened.  We can't recess for even a

04:58:15  5    couple hours or days, we'll select one of you, and we'll do

6    it by lot.  So we don't know which one will be the jury.

7    We'll literally pull you out of a hat, so equal attention,

8    okay?

9              Other than that, Counsel, may I have the jury go

04:58:28 10    home tonight?

11              MR. WILKE:  Yes, Your Honor.

12              THE COURT:  Folks, please -- yes.

13              I need a microphone.  And I apologize.  I need to

14    be able to hear you.

04:58:36 15              There.

16              UNIDENTFIED JUROR:  We were told that we would get

17    a telephone number to call directly if for some reason we

18    aren't able to make it.

19              THE COURT:  Yes.  But you're going to make it.

04:58:48 20              UNIDENTFIED JUROR:  We are.

21              THE COURT:  But just in case.

22              UNIDENTFIED JUROR:  I'm a plan-ahead person.

23              THE COURT:  Do you want to give that to them now

24    to write down, or tomorrow?  It has to be the number, I

04:58:59 25    think, of this Court downstairs or here.

04:59:04  1          THE CLERK:  It has to be up here.

          2          THE COURT:  So let's give that to them now.

          3          THE CLERK:  Do you want to give them your chambers

          4   number?

04:59:09  5          THE COURT:  No.

          6          THE CLERK:  Okay.  So --

          7          THE COURT:  Better yet, when you come in tomorrow,

          8   why don't we write this down for you.

          9          UNIDENTFIED JUROR:  But we do report to this room?

04:59:23 10          THE COURT:  Yes.  But you come through those

         11   doors.  The locks [sic] will be locked until we open.  At

         12   the end of the hallway, right down here, there's going --

         13          Deb, could you show them on the way out?  And

         14   we'll have that door opened and then we'll switch another

04:59:39 15   day to another entrance, but for tomorrow --

         16          THE CLERK:  Do you want me to show them down

         17   there?

         18          THE COURT:  Folks, all 12 of you and four

         19   alternates are going to go with Debbie.  She's going to walk

04:59:48 20   you down to the jury room where you'll be tomorrow morning.

         21   And she's going to show you a little door, Debbie, at the

         22   end of the hallway --

         23          Deb?  I lost you.

         24          -- at the end of the hallway to come to tomorrow

05:00:03 25   morning.  You just come down that hallway, and we'll have

*Deborah D. Parker, U.S. Court Reporter*

05:00:07  1    the doors open at 8:30.  So if any of you get here a half

2    hour early, you'll be comfortable.  There should be soda

3    pop, everything inside the refrigerator; if not, you'll let

4    us know what you need, and we'll make you comfortable, okay.

05:00:19  5          So if you would go with Debbie for just a moment,

6    she'll show you so there's no confusion tomorrow.  And then,

7    Deb, excuse them and send them out the other door, so you

8    can have time with counsel.

9          *(The jurors and alternates exited the courtroom.)*

05:00:32  10          *(The following proceedings were had outside the*

11          *presence of the jury:)*

12          THE COURT:  So I would like to excuse you tonight,

13    unless there's some court business.  But my -- tomorrow I

14    think should look like pre-instruction to the jury, and

05:01:10  15    you've been kind enough to give me those instructions to

16    read by agreement of counsel.

17          Your opening statements tomorrow.  But I think out

18    of courtesy, your first witness, who would you be calling?

19          MR. STAPLES:  The fisherman who found the body.

05:01:26  20    We've already given the name to Mr. Wilke.  It's --

21          THE COURT:  Oh, you have.  You, basically, have

22    the names for tomorrow.

23          MR. WILKE:  I believe I have the lineup for

24    tomorrow.

05:01:36  25          Do you think we'll finish -- we'll get to

*Deborah D. Parker, U.S. Court Reporter*

05:01:40  1    Ms. Nguyen tomorrow?

2              THE COURT:  Then, let's do this:  Let's get you

3    out of here for tonight.  I want to keep you fresh as much

4    as possible.  There will be some late hours, I anticipate,

05:01:47  5    but we don't need to create those late hours, okay?

6              All right.  Good enough for tonight and excused?

7              Mr. Wilke?

8              MR. WILKE:  Yes, Your Honor.

9              THE COURT:  Mr. Staples?

05:02:00 10              MR. STAPLES:  Yes, Your Honor.

11        *(At 5:02 p.m., proceedings were adjourned.)*

12

13                              -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

*Deborah D. Parker, U.S. Court Reporter*

CERTIFICATE

I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.


Date:  January 5, 2022


_____/s/DEBORAH D. PARKER_____
DEBORAH D. PARKER, OFFICIAL REPORTER